Dāne *v.* Gilmore.

NATHAN DANE, *State Treasurer, versus* CHARLES D. GILMORE & *als.*

A judgment against the sheriff for his default is a pre-requisite for maintaining a suit upon his official bond.

If such judgment is obtained by fraud or collusion, it is not conclusive against the sureties on the bond.

A sheriff, *as such*, cannot legally serve an execution on his deputy, even though directed to him.

The fact that he had served the writ on his deputy and made an attachment of personal property, before the deputy was appointed, does not authorize him to serve the execution after such appointment.

In a suit against a sheriff for not serving an execution against his deputy, which he had taken for service, he is not estopped from showing that he could not legally serve the precept.

The statute, directing that the appointment of a deputy sheriff shall be lodged in the clerk's office, does not require it to remain there. After it has been recorded, the deputy may take it away.

After such appointment is recorded, it is notice to all of the fact of the appointment.

The sureties on a sheriff's bond are not liable for his acts or omissions in the service of a precept, which, by law, he was not authorized to serve.

If, in a suit on the official bond of the sheriff, *it is admitted* that the sheriff had no authority by law to serve the precept, his failure to serve which was the neglect complained of, judgment will be given for the defendants, although the plaintiff had recovered a judgment against the sheriff for the same alleged default.

ON FACTS AGREED. ACTION OF DEBT on bond of Gilmore, sheriff of Penobscot county, in the name of the State Treasurer, for the benefit of Nathaniel F. Tenney & als., who are alleged to have been injured by his, the said Gilmore's, misfeazance in his said office. On the 7th July, 1859, said Tenney & als. sued out a writ against one Joshua Dennis, on which the said Gilmore was directed to attach the stock of goods of said Dennis to the amount of fourteen hundred dollars. Said Gilmore, on the 8th day of July aforesaid, did make the attachment of said Dennis' goods, as directed, and made his return thereof on said writ, in due form.

Dane *v.* Gilmore.

Judgment was recovered in said action, on the 16th day of January, 1860, and execution issued and placed in the hands of said Gilmore on the 15th day of February, 1860. Said execution was directed to the sheriffs of our several counties, and not to a coroner, nor was said Gilmore a coroner.

On the back of said execution, said Gilmore was directed to satisfy the same out of the goods attached on the original writ. Gilmore took the execution, but neglected to satisfy said execution and to return the same.

On the 18th September, 1860, the said Tenney & als., sued him, the said Gilmore, as sheriff, for his alleged neglect aforesaid, and, on the 27th August, 1861, recovered judgment by default. Execution issued thereon September 11, 1861, and demand was made on Gilmore the same day for payment thereof, which was refused.

This action is brought to recover the amount of said judgment against the defendants, who are principal and sureties on his, said Gilmore's, official bond as sheriff. Said bond is dated January 1st, 1859, and was duly approved.

In a book labelled "record of appointments of deputy sheriffs, vol. 5," in the clerk's office in said county, is a copy of the appointment of said Dennis, by said Gilmore, as his deputy, dated August 17, 1859, and of the certificate of the qualification of said Dennis; and it is the only and all the record contained in said office in reference to said Dennis as a deputy under said Gilmore, and bears no seal or certificate of the clerk of the courts of said county.

Plaintiffs in interest had no knowledge that said Dennis was, or assumed to be, a deputy under said Gilmore at the time of the delivery of said execution to said Gilmore for satisfaction.

Gilmore was sheriff from the time of the original attachment, till after the execution against said Dennis was delivered to him.

Said Dennis acted as a deputy of said Gilmore from the date of his appointment till January 1, 1861. Neither the plaintiffs in interest nor their attorneys knew that fact on

the said 15th day of February, 1860, nor for a long time thereafter.

The certificate of appointment of said Dennis, as deputy, was lodged in the clerk's office and recorded, and a certificate made thereon by the clerk, and was then taken away by said Dennis. It has been the practice in this county for deputies to take away their written appointments, after they have been recorded.

Upon the foregoing, a default or nonsuit was to be entered with the following proviso :— The defendants claim to be able to show that, while the suit was pending against said Gilmore, for said alleged default, the plaintiff's attorneys had him under arrest upon a writ and an execution in favor of the plaintiffs upon the same cause of action, on which judgment was recovered against said Dennis, and requested him, while under arrest, to agree to a default in the aforesaid suit, then pending; that said Gilmore at first refused, and gave as a reason, that he did not think his bondsmen should be made liable for this claim, but afterwards, in consideration of a release from arrest on said writ and execution, signed a paper to be defaulted, and the action was defaulted accordingly.

It was agreed that if, in any view of the case, this evidence would be admissible and material, the case should stand for trial.

*Blake & Garnsey*, for the plaintiff.

I. Gilmore having attached the goods, and having them in possession when he received the execution, and undertaking to serve it, with a full knowledge of the facts, of which the plaintiffs were ignorant, acted *colore officii*, and, for such acts, he is officially holden. *Harris* v. *Hanson*, 11 Maine, 244; *Bond* v. *Warren*, 7 Mass., 130; *Knowlton* v. *Bartlett*, 1 Pick., 274; *People* v. *Schuyler*, 4 Comstock, (N. Y.,) 174.

It is no defence, that it was an illegal act for Gilmore to serve an execution on his deputy. The bond is for the very

purpose of protection against the *illegal* acts of the sheriff; not against his *legal* acts.

II. As Gilmore had the goods, no one else could serve the execution, especially as it was directed to the sheriff, and Dennis is not described in it as a deputy.

III. Dennis was not legally appointed deputy. 1. The statute provides that the appointment of deputy shall not be valid until recorded, and the record does not show when it was recorded. R. S., c. 80, § 8. 2. The appointment must be *lodged* in the clerk's office; that is, it must be deposited and retained there. No custom can control the law in this particular.

IV. The judgment against Gilmore, being conclusive against him, till reversed or annulled, is also conclusive against all the defendants.

*J. A. Peters*, for defendant.

The opinion of the Court was drawn up by

APPLETON, C. J.—Nathaniel F. Tenney and others, having recovered judgment against the sheriff for official neglect, bring this suit against him and his sureties on his official bond. The signatures to the bond being admitted, and the judgment being produced, if the case rested here, the plaintiff's right to recover could neither be doubted nor denied. *Cony* v. *Barrows*, 46 Maine, 497. But the parties, having agreed to certain other facts, have submitted their rights to our determination upon those facts, waiving, by their agreement, the questions of their admissibility and their competency, which otherwise would have been both open to them.

That the evidence offered would make out a *prima facie* case is conceded. It is not necessary to consider how far a judgment against the principal is conclusive upon the sureties without notice. It is well settled, if it be obtained by fraud or collusion, they may contest its conclusiveness as against them. *Lowell* v. *Parker*, 10 Met., 314.

The main question presented is, whether the sheriff can legally serve process on his deputies, for, if he cannot, he can hardly be held responsible for omitting to do what could not legally be done by him. And if he has been guilty of no official neglect there can be no liability on the part of his sureties.

By R. S., 1857, c. 80, § 42, "every coroner *shall* serve and execute, within his county, *all* writs and precepts in which the sheriff thereof or his deputy is a party, unless served by a constable," &c.

The authorities are numerous that a sheriff cannot legally serve on his deputy. "When a levy is made by a deputy sheriff, under an execution in which he is a party, a sale under it will vest no title in the purchaser. And, when another deputy of the same sheriff is a party, he cannot levy under it; and the Court will set the levy aside on motion." *Singletary* v. *Carter*, 1 Bailey, 467. "Officers," remarks Sewall, C. J., in *Gage* v. *Graffam*, 11 Mass., 181, "are not to serve writs on themselves. The sheriff and his deputies, in the office of sheriff entrusted to serve writs, constitute in legal analogies one office and one officer." The case of *Johnson* v. *McLaughlin*, 9 Ala., 551, is strongly in point. "Was the execution," inquires Collier, C. J., in this case, "in respect to which the sheriff is charged with default properly directed to him, and was he bound or even authorized to obey its mandate? * * If the sheriff be a party, the law requiring the writ to be addressed to a coroner is not merely directory, but, if disregarded, it has been held the Court will set the process aside. Although an execution is said to issue from the Court, yet the issuing of it by the clerk is a ministerial act, and only derives judicial sanction from its conformity to the judgment. Its direction to any class of executive officers does not proceed from anything found in the judgment itself, but from the suggestion of the clerk, whose duty it is to give it the proper form. Hence, it is clearly competent for the defendant in execution to object to it for non-conformity with the

Dane *v.* Gilmore.

judgment, or by showing it was directed to an officer, who was incompetent to serve it. * * What has been said is quite enough to show that the direction of the execution did not impose upon the sheriff the obligation to serve it."

Neither does the fact that the sheriff had served the original writ on Dennis *before* his appointment as a deputy, by attaching his goods, affect in any way or enlarge his right to make service of the execution, which was placed in his hands after his appointment. "It is claimed," observes BENNETT, J., in *Bank of Rutland* v. *Parsons*, 21 Vermont, 199, which resembles the case at bar in most essential particulars, "that as the defendant served the writ of attachment without objection, took a receiptor, and pursued him to judgment, he is to go on and execute the final process, which was put in his hands by the bank. But we think this cannot alter the case, nor clothe the defendant *with official power;* and, without official power to perform an act, he cannot be guilty of official neglect for not doing it."

Nor was the sheriff in any way estopped in the suit against him, from setting up the defence that he had *no* power legally to serve the execution against his deputy, which the plaintiffs placed in his hands. In discussing this question in the case last cited, BENNETT, J., says, "we know of no doctrines of *estoppels* that can apply to such a case as this. We think it more reasonable to hold the statute, which prohibits the defendant from executing the writ of execution, to be an *estoppel on the sheriff*, though he disregarded its injunctions in serving the original writ." In *Case* v. *Humphrey*, 6 Conn., 130, where one, not authorized to serve a writ, made service in fact by leaving a copy; it was held, in an action against him for a false return, that he was not thereby precluded from denying that the writ was legally directed to him. "It has been said," remarks HOSMER, C. J., in delivering the opinion of the Court, "the defendant is estopped to deny that the writ was legally directed to him, inasmuch as he acted under it and thus vir-

tually declared that the direction was legal. The objection is too unfounded to require discussion."

But it is insisted that the facts, as admitted, fail to show that Dennis was a deputy of the sheriff. But we think otherwise. The case finds that "said Gilmore gave said Dennis, the defendant in the original writ, a commission, upon which he was sworn, which was lodged in the clerk's office and recorded, and a certificate made thereon by the clerk, and was then taken away by said Dennis. It was the original of which the aforesaid record is a copy. It has been the practice in this county for deputies to take away their written appointments after they have been recorded."

The statute requiring the appointment to be *lodged* in the clerk's office does not intend that it shall forever remain there. It is to be lodged there for the purpose of being recorded. When recorded, the deputy may take it away. A copy of the appointment and of the oath administered to the deputy is found in a book in the clerk's office labelled, "records of appointments of deputy sheriffs, vol. 5." The commission to the deputy sheriff shows that it has been lodged and recorded in the clerk's office. It is admitted that the official attestation of the clerk shows these facts. Neither the sheriff nor his deputy could contest the appointment of the latter. The facts as agreed upon bring this case directly within R. S., 1857, c. 80, § 8. If Dennis be not a deputy on the above facts, it will be impossible to hold the sheriff for the negligence or misconduct of any officer, for the same proof would be found to apply to all his deputies.

The result is that Dennis was a deputy sheriff of Gilmore, for whose official acts he would be responsible. The plaintiff knew, or by examining the records might have known, who were the deputies of the sheriff, — and should not have placed the execution in the hands of one not competent to serve it.

The sheriff, then, by taking an execution against his deputy, which he could not legally serve, was, as to his sureties,

Dane *v.* Gilmore.

acting individually and not officially. Not being authorized to make service, they cannot be liable for his unauthorized and illegal acts or omissions to act. In the suit against him, for official neglect, he might have invoked in bar thereof the facts here admitted, and the defence would have been sustained. All these facts were known to him, and it was his duty to his sureties to have resisted the suit.

The liability of the sureties will depend upon the law as applied to the facts as agreed upon in this case. According to the agreement of the parties, Dennis was a deputy sheriff, and the sureties of the sheriff cannot be held for his acts or omissions to act, when such action was not and could not have been official.

The sureties had no notice of, and were not parties to the judgment against the sheriff, and, it would seem, are not, therefore, to be absolutely concluded thereby; certainly not, if it was collusively obtained. "It is clear," observes PAR-RIS, J., in *Hayes* v. *Seaver*, 7 Maine, 242, "when the executors neglected to make a defence which would have availed them, that the executors suffered a judgment to be rendered, which they might have successfully resisted; and, inasmuch as the defendant, their surety, was not a party, he ought not to be barred by that judgment, thus *negligently* or *collusively* suffered by his principals, were it *de bonis propriis*, but may now be permitted to avail himself of the same matter in his defence, which they might have urged against the original suit on the *scire facias.*"

It follows that, in truth, the sheriff, notwithstanding the judgment against him, has been guilty of no *official* neglect, however he may have personally misconducted himself in the matter. The facts agreed upon, without objection as to their competency or admissibility, fully establish this. By the agreement of parties, there was no *official* neglect, and, there being none, there is no liability on the part of the sureties for the unofficial misconduct of one holding the office of sheriff.                        *Plaintiff nonsuit.*

RICE, CUTTING, DAVIS and WALTON JJ., concurred.

KENT, J., held that the case should stand for trial.

I doubt whether, on this report, we can find enough to authorize us to overcome the conclusiveness of the judgment against the sheriff, without a new trial. *If* it is admitted, as a general principle, that a judgment against the sheriff for a default is conclusive, or *prima facie* conclusive, upon his sureties, on a suit on the official bond,—it seems to me that all the facts stated in this report cannot avail in defence of this suit as it now stands. This doctrine is admitted in the opinion, and seems to be the rule of the Court, in *Cony* v. *Barrows*, 46 Maine, 497. The only question then is whether the facts, admitting them to be true as stated in the report, estop or conclude the party to the extent of overcoming the conclusiveness of the judgment.

Undoubtedly we are to assume and consider all these matters to be true, in fact. But if we do—does it follow that these facts are sufficient to overcome the judgment? Here are a series of facts—that Gilmore was sheriff; that he attached and made a return; that judgment was recovered; execution issued, and Gilmore neglected to keep and sell the goods; a suit against Gilmore for default; a judgment thereon in due form, and other facts as to Dennis, the debtor, being his deputy, &c.

Now is not the fact that a judgment was duly rendered against Gilmore, a fixed and admitted fact? Can we regard the other fact, as to Dennis being his deputy, otherwise than as a single fact—the bearing and effect of which is to be determined in connection with all the other facts?

If this had been debt on the judgment against Gilmore alone, and the parties had agreed to the same facts as herein set forth, should we say that, by the admission of the plaintiff that the debtor was his deputy, contained in a statement of facts, that Gilmore could go behind the judgment and defend successfully and overcome it, by the admission of the existence of a fact which he might have shown in defence in the first suit against him?

Or take any case of debt on judgment. Can a judgment be impeached, and its validity and sacredness and conclusiveness be overcome, where the parties agree to a statement of facts which contains admission of matters which would have been a good defence in the original suit; as fraud, deceit, want of consideration, or even payment. These might be good grounds for review, — but not as a defence against a suit on the judgment.

It strikes me that all we have a right to do, in a case like this, is to hold both parties to the truth of the facts as stated. But if one of those facts (as a judgment) is of a nature not to be overcome or affected by other facts agreed, we cannot properly say that it shall be. The fact that there was a judgment is to be considered, with all its incidents and conclusiveness, as the first fact of the case. Are there any other facts which legally overcome it?

But, I admit that another question may be raised on this case, as stated. How far is the judgment against the sheriff conclusive on the sureties on the bond? Is it to be regarded as if the sureties were parties to that judgment, and are we to hold them exactly to the same extent that it binds the sheriff, who was a party?

This action is on the bond, which is conditioned "for the faithful performance of his duties as sheriff." The statute c. 80, § 12, provides for a suit on the bond by any one injured by the sheriff's neglect. But he must first ascertain the amount of his damages by judgment in a suit against the sheriff for such neglect. *Dane* v. *Gilmore*, 49 Maine, 173. This judgment must be produced, and is undoubtedly *prima facie*, and, in absence of all other facts, sufficient to maintain the suit on the bond. But it is by force of the statute. The sureties were not parties, nor had they any notice of the pendency of that suit for negligence. They had no day in Court; no hearing; no opportunity to prove any matters in defence.

If it is granted that the judgment is effective, yet it must be a *judgment fairly obtained* on the merits, and not one

the result of *collusion*, or by consent obtained by taking undue advantage of the situation of the party.

Sureties, who are bound for the honest and faithful execution by another of official duties, will be in great danger of being held, not only to answer for the actual defaults, but for all judgments which can be obtained by the consent of the sheriff, extorted from him, or assented to by him to obtain favor, or to secure benefits in relation to other distinct matters.

Suppose an action is brought against a sheriff for neglect in not arresting a debtor, or for not attaching or holding goods, in a certain suit named, or any other malfeasance or misfeasance, and the case is entered in Court and the sheriff, in writing, consents to be defaulted for $10,000, a judgment for that sum is rendered, and afterwards a suit is instituted, like this, on the bond, — is that judgment so absolute and conclusive that the sureties cannot show that it was not a fair judgment rendered upon merits, or that, in fact, there was never any such suit as the one named, — or that no such writ was ever put into sheriff's hands, — or that no property was attached, — but that the consent to a default was obtained by promises of favor, or by money actually paid to the sheriff to induce him to consent, or by releasing him from arrest on a suit? Must the sureties pay $10,000, because the sheriff had yielded to bribes? If the sureties had been parties to the first suit, they could have looked after the case, and it would have been their duty to see that no such judgment was rendered. The law assumed as probable that any sheriff would defend with all his powers, — and, if possible, save himself and his bondsmen harmless.

It must be remembered that the question here is not whether the sheriff alone, on a suit on the judgment, could interpose this objection. It may be granted that he could not. It is not an attempt to impeach or nullify that judgment; *that*, as between the parties, stands good, it may be, until reversed. But, when it is attempted to use that judgment to sustain an entirely different suit, not on the judg-

Dane *v.* Gilmore.

ment, but on a bond, I think the defendants may show, if they can, that the judgment was not obtained in the due course of justice, but by collusion, or the deliberate abandonment of a defence by the sheriff, he being aware of the existence of what he supposed a good defence, and being induced to yield to the request of the plaintiffs because he was under arrest by them, and, in consideration of a release from arrest, he signed a paper consenting to a default.

If these facts are established by proof, I do not see why they do not make a case of a judgment by collusion; not merely by *negligence* on the part of the sheriff. The authorities fully sustain this view.

Sureties are not bound by a judgment *negligently* or collusively suffered. *Hayes* v. *Seaver*, 7 Maine, 240.

The general rule is well stated in *Lowell* v. *Parker*, 10 Met., 315. Such judgments against sureties are *prima facie* evidence, to stand until impeached or *controlled* by evidence of fraud or collusion.

*Dawes* v. *Shed*, 15 Mass., 9, is a still stronger case, in which it was held that sureties are not estopped by a judgment obtained or suffered collusively or negligently.

My view on the whole case is that the evidence offered should have been admitted, and that a new trial should be ordered. I do not think that there is enough evidence of collusion or fraud, if we throw out of the case the offered evidence; but there is, if that can be proved by competent testimony. And I do not think that the sureties can avoid the effect of the judgment, by simply showing, or having admitted, facts as existing, which the sheriff might have shown in defence, and, in justice to his sureties, ought to have shown. *Mere neglect*, without collusion or fraud, or any act on either side, except a simple default entered by consent, is not sufficient ground to avoid the judgment and render it inoperative against sureties.

It is to be remembered that, by statute c. 80, § 12, a plaintiff can only obtain judgment in a suit on the bond, by first showing a judgment obtained against the sheriff. When

we say that the judgment offered is invalid or inoperative, it seems to preclude the necessity of any proof of actual neglect in defending on the part of the sheriff, and the plaintiff is without any remedy on the bond. I state this simply to show that, if we adopt a rule that *mere* neglect of a sheriff to defend is sufficient to destroy the effect of the judgment against sureties, we may open the door a little too wide. I think the case should go back for trial.