Loyless and Wife *vs.* Rhodes and Day.

---

No. 100.—Elliott B. Loyless and Wife, plaintiffs in error, *vs.* John A. Rhodes and Richard B. Day, executors, &c. of A. Rhodes, deceased.

[1.] The opinion of the Court, in *Mobley et. al. vs. Mobley,* 9 *Geo. Rep.* 247, referred to and explained.

[2.] The mode of procuring letters dismissory, by executors and administrators specified.

[3.] An executor postponing a settlement with one of the legatees, under false pretences, and finally delivering over the entire estate to the other legatees, will not be protected for this mismanagement, by his letters of dismission ; it is a fraud, in fact, which will vitiate his discharge.

In Equity. Decision on demurrer, by Judge STARNES, Richmond Superior Court, February Term, 1851.

Elliott B. Loyless and Nancy, his wife, formerly Nancy B. Rhodes, filed their bill against John A. Rhodes and Richard B. Day, as the executors of the last will of Absalom Rhodes, deceased; alleging, that under the will of said deceased, complainant, Nancy Loyless, was a legatee; that the estate was worth $30,000, and complainant entitled to one-sixth part thereof; "that after allowing the usual time to elapse for a settlement and payment of all demands against deceased, they applied to the executors and requested to be paid the share of said Nancy. But they (the executors) alleged that there was still a number of unsettled demands, and that some of them were litigated and in suit against them as such executors—declined complying with the request of complainants, and informed them that a considerable length of time would necessarily elapse before they could pay and deliver over complainant's share." " That complainants rested contented with this statement, having full confidence in the executors; and as their circumstances were needy, they removed to Stewart County in this State, and have resided there for several years past; that they frequently, after their removal, applied to said executors by letter, but when they received any reply, it was that the estate was still involved in litigation, and there could be no division among the devisees and legatees." " That in June 1850, very much to their surprise, complainants ascertained that the executors had settled up the estate of the said Absalom, divided the residue among the other legatees, *excluding complainant entirely;* and had procured an order from the Court of Ordinary, dismissing them from their trust, and authorizing letters dismissory to issue to them."

Complainants further charged, " that the said order was irregular, fraudulent and void, for the following reasons, viz : The said executors did *not fully discharge their duties* before they applied for letters dismissory; they presented *no petition* to said Court, praying a discharge ; there was *no order* of said Court at *January Term,* 1849, authorizing citation to issue; that no such

citation was duly or legally published; that *no examination into the situation of the testator's affairs and estate*, was made by said Court, and that said estate never has been fully and legally administered; all which was occasioned by the irregular and negligent proceedings in said Court, and by the improper conduct, artifice and fraud of the said executors, entirely without the knowledge of complainants, and intended by said executors to deprive complainant of her legacy." Prayer that the order of dismission may be declared null and void, and for an account.

The following was the order of dismission referred to :

"Upon the application of John A. Rhodes and Richard B. Day, executors of the last will and testament of Absalom Rhodes, deceased, for letters dismissory, they having filed their petition at the January Term, 1849, of the Court of Ordinary, and citation having been duly issued and published, as is in evidence to the Court; and no cause being shown, or objections filed in the office of the Clerk of this Court to the contrary; and it appearing to the Court that they have faithfully and honestly discharged the trust and confidence reposed in them and that they have fully administered on said eastate : *Ordered,* That they be and are hereby released, discharged and dismissed from their liability, as executors on the said estate, and that letters dismissory be issued to them accordingly.

On demurrer to this bill, for want of equity, the Court overruled the demurrer, and this decision is brought up for review.

JOHN SCHLEY, for plaintiffs in error.

A. J. MILLER and TOOMBS, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Before proceeding to the decision of this case, I will take occasion to state, that according to the report of *Mobley and others vs. Mobley*, 9 *Geo. Rep.* 267, as it now stands, this Court is made to hold, that the order of a Court of Ordinary, dismissing the representative of an estate, is valid and sufficient, al-

though the facts do not appear of record, which are necessary under the law, to give that tribunal jurisdiction.

The judgment of the Court of Ordinary of Appling County, was attacked on two grounds: 1st. Because Jesse Mobley, the administrator of his father, had committed fraud in fact; and 2dly. because there was no evidence in the records of the Court of Ordinary, that application for letters dismissory had been made, and a citation issued and published in terms of the Statute. The Circuit Judge overruled both objections—a writ of error was sued out, and upon the hearing, we agreed to restrict our judgment to the *first point,* and to waive the consideration of the *second* question, until it should be more fully and satisfactorily discussed, as we had previously done, for the same reason, in *Worthey et. al. vs. Johnson et. al.* 8 *Geo. Rep.* 236.

[2.] Before dismissing this matter, I would suggest, that for the purpose of making an order of discharge available as a protection to the party, there should be *record evidence* that a petition has been presented, setting forth that the executor or administrator has fully discharged the duties assigned to him, and praying to be released from his executorship or administration; that an order was passed by the Court of Ordinary for a citation to be issued, requiring all persons concerned to show cause, if any they have, why the said executor or administrator, *on the day therein to be named,* should not be discharged; that said citation has issued and been published in one or more gazettes of this State, for the space of six months; that no cause was shown against the application, or if objections were filed, that they were overruled; and that it appeared from an examination into the situation of the testator's affairs and estate, that the petitioner had faith-fully and honestly discharged the trust and confidence reposed in him. And it would be well for the order of discharge to recite on its face all these facts.

I do not say, for I am not authorized or prepared to do so, that no one can be dismissed from his liability, without a rigid compliance, in so many words, with each and all of these formularies; I will say, however, that it is safer altogether to observe them. By doing so, it places the judgment of the Ordinary up-

on the same footing with that of any other Court; whereas by neglecting to have the initiatory steps, necessary to give it jurisdiction, spread on its records, its judgment might be treated as a nullity; especially, where it is interposed as in the present case, as a bar to a full and fair investigation of the trustees' actings and doings upon the estate.

[3.] We think the decision of the Superior Court, overruling the demurrer, and sustaining the bill, ought to be affirmed, for the reason that the statement in the bill constitutes a case of actual fraud.

It is alleged that the complainants are legatees of Absalom Rhodes, deceased, and entitled to one-sixth part of his estate; that as such, they repeatedly applied to the defendants, who are the executors, for a settlement of their share; that they were put off upon the pretext, that there were a number of unadjusted claims against the testator, some of which were in litigation; and that on that account, a considerable time must necessarily elapse, before they could pay and deliver over their part; that content with this representation, and having full confidence in the executors, they removed from Richmond to Stewart County, where they have resided for several years past; that since their removal, they have frequently applied by letter, for a settlement, and they were still postponed under the same pretence, namely: that the estate was involved in law suits, and in consequence thereof, there could be no division; that in June, 1850, very much to their surprise, they ascertained that the defendants had distributed the whole estate among the other legatees, excluding them entirely from any participation in the property; and that by fraud and artifice, notwithstanding this mismanagement, and without the knowledge of the complainants, they had procured an order of discharge, for the purpose of depriving them of their legacy. I ask, would the Ordinary—would any honest Court, have granted this dismission, with a knowledge of the facts charged in the bill? Unquestionably not. We are bound to believe that the Court was imposed on, or else it never would have sanctioned the wilful appropriation of this estate to five only of the six legatees to whom it belonged. Had the di-

vision been made in ignorance of the fact, the case would have been very different. As it is, we can view it in no other light, than a fraud upon the rights of the complainants. Our opinion, therefore is, that the bill should be answered, and an inquiry had into the alleged misconduct of the executors.