THE FARMERS AND EXCHANGE BANK, plaintiff in error, vs. Ruse, Patten & Co., defendants in error.

A judgment in attachment, will be enjoined, if the defendant had a good defence to the suit, and his failure to make the defence, was owing, not to any fault or negligence on his part, but, to the fault of the plaintiff.

In Equity, in Muscogee Superior Court. Decision by Judge Worrill, at May Term, 1858.

This was a bill filed by the Farmers and Exchange Bank of Charleston, South Carolina, against Ruse, Patten & Co., of Columbus, Ga. The bill states that on the 24th March, 1857, defendants sued out an attachment against complainant, returnable to May Term, 1857, of the Superior Court of Muscogee county, for a debt amounting to $2,050, besides interest, which they alleged complainant owed them, but which the bill avers to be wholly pretensive and unfounded. That on the 25th March, 1857, the day after said attachment issued, the same was levied upon a desk, journal, bill-book and sign, as the the property of complainant. That the Mechanics Bank, of the city of Augusta, was served with garnishment on the 26th March, and .on the 19th day of December, during the regular Term of Muscogee Superior Court, judgment was entered up in said attachment cause against complainant, for $2,050, besides interest and cost.

The bill further states, that said attachment was sued out, and the judgment aforesaid procured without complainant's having any notice or knowledge thereof, and that the same is a great surprise, and operates most oppressively and unjustly upon complainant. That the first intimation that complainant had of the pendency of said suit, was by letter from Milo Hatch, Cashier of the said Mechanics Banks, dated 2d December, 1857, in which he informed complainant that his bank had been garnisheed on the 26th of the March preceding, and that by the advice of their attorney, he should, on

that day, (2d Dec., 1857,) make answer that at the time of the service of the summons of garnishment, his bank had in hand belong to said complainant upwards of $3,000. That soon thereafter complainant employed an attorney in Columbus, Georgia, to appear and defend said suit. That the attorney upon an examination, found that judgment had been obtained as before stated against complainant, and the Court had adjourned.

The bill further States that complainant has a good and valid defence to said suit; that the debt upon which said attachment issued and judgment obtained is unfounded, and has no existence; that complainant does not owe Ruse, Patten & Co. anything. That said judgment is utterly without consideration, and its enforcement under the circumstances, would be unconscientious and contrary to equity and good conscience.

The bill further states, that by reference to plaintiff's declaration in attachment, it appears that the demand consists of a check drawn by one Edward T. Taylor on complainant, at its pretended agency in the city of Columbus, Georgia, in favor of Ruse, Patten & Co., for $2,050, dated 26th September, 1856, and by said Taylor marked across its face, "good forty-five days after date," and signed by said Taylor as agent of complainant; that at the time said check was thus accepted, Taylor was not agent of complainant, and had no authority to accept said check, or to do or transact any manner of business for, and on account of complainant, and which would have been proven on the trial of the attachment, if notice of said suit had reached complainant in time to have made defence.

The bill prayed, that all further proceedings on said judgment be enjoined; that the same be set aside, and that complainant be allowed to appear and defend said suit, and that another and new trial be granted.

The injunction issued by order of the Judge at chambers.

The bill was amended at May Term, 1858, stating that defendant obtained from Taylor said check and acceptance, as

collateral security, to indemnify them against their liability as acceptors of a draft for $2,000, drawn by Williams & Co., of Alabama, upon Ruse, Patten & Co., payable forty-five days after date, to the order of said Williams & Co., and by them endorsed in blank, and presented by Taylor for acceptance, and which they refused to do until Taylor gave them the check sued on. The draft of Williams & Co. was dated 26th September, 1856, the same day that the check bears date, and complainant states that Taylor had no authority to make such an arrangement as agent of complainant; that it was drawn for, and on his individual account, and to subserve his own interest and that of Ruse, Patten & Co.

The bill further states, that said draft purporting to be drawn by Williams & Co., was forged by Taylor; that it was afterwards paid by Ruse, Patten & Co., after said forgery was known. That Ruse, Patten & Co., are now insolvent, and suit is pending in Alabama against Williams & Co., on said draft, who are defending the same on the ground that it is not their bill, but is a forgery, and that said suit in Alabama is pending for the benefit of the Marine Bank of Georgia, to whom said draft has been transferred.

This bill and amended bill defendants answered, admitting the statements as to the sueing out the attachment, and recovery of judgment against complainant as contained in the bill, and setting out the circumstances, under which said check was obtained, similar to those set out in the amended bill. They deny that they knew that Taylor was not the agent of complainant, and as such authorized to accept or make the check as he did; they allege that he had been for some time before the duly authorized and recognized agent of complainant in the city of Columbus, and if such agency had been withdrawn or discontinued, they had no knowledge of that fact, and no notice thereof had been given to them, or to the public.

They aver that complainants had legal notice of the proceedings in attachment; that it had such notice, and all the

notice provided and required by law in such cases, and that their judgment was duly and legally obtained without fraud, and by due process of law. They deny that complainant has a good and legal defence to their action by attachment, and aver that said check was received from Taylor *bona fide*, and not to defraud or injure complainant.

They admit that since the bringing of the suit by attachment, that they have become much embarrassed in their pecuniary affairs, and that said claim has been transferred to the Marine Bank. They deny that they had any notice or knowledge that the draft accepted and paid by them was forged, or believed to be so at the time it was paid by them, but admit that Williams & Co. are defending the action against them in Alabama, on that ground.

Upon hearing the bill and amendments and the answers thereto, the Court dissolved the injunction upon the grounds, that there was no equity in the bill, and if there was, that it had been sworn off by the answers.

To which decision counsel for complainant except.

Martin & Martin; and Denton, for plaintiff in error.

Dougherty; and Cooper; and Moses, *contra.*

*By the Court.*—Benning, J. delivering the opinion.

Was the judgment disolving the injunction, right?

That judgment was put on two grounds—one, that there never was any equity in the bill; the other, that if there ever was, it had been sworn off by the answers. Were these grounds sufficient?

First, as to the first ground. Is it true, that there never was any equity in the bill?

The bill seeks to have a judgment enjoined—a judgment in favor of the defendants, against the complainant. Being a bill of that kind, it had equity in it, if its statements showed two things—first, that the complainant had had a good defence

to the action at law; secondly, and, that, the failure to make that defence there, was owing, not to any negligence or fault, in the complainant, but to fault in the defendants, or their attorney.

The statements in the bill, it is clear, showed the first of these two things. They showed, that Taylor had no authority from the complainant, to certify or accept, as complainant's agent, the check on which, the action at law was founded.

And those statements, taken in connection with the Cashier's affidavit filed with the bill, showed, as we think, the second of the two things.

They showed, that the judgment was dated the 19th of December, 1857, being a judgment rendered by the Superior Court of Muscogee county—that it was a judgment in attachment—that the attachment was served in Muscogee county and, also, in Richmond county—in Muscogee on the 25th of March, 1857, by a levy on a desk, a journal, a bill-book, and a sign—in Richmond, on the 26th of March, 1857, by a summons of garnishment, delivered to the Mechanics Bank of Augusta—that the complainant never heard of the attachment, until the 3d of December, 1857, sixteen days before the date of the judgment—that, on that day, the complainant's Cashier, Breese, received a letter from Hatch, the Cashier of the Mechanics Bank of Augusta informing him, that that bank, had been served with a summons of garnishment, in "Ruse, Patten & Co., vs. Farmers and E. Bank So. Ca." and that said bank was, on that day, going to answer through him that it owed complainant "$3,000 and upwards."

That, on the same day, Breese replied to this, saying, that the information was "all news" to him—that, on the 4th, Hatch replied to this as follows;

"I understand from the plaintiff's attorney, here, George T. Barnes, that they expected to obtain a judgment against you, in Columbus, of something over $2,000"—that on the 5th Breese replied to this, requesting Hatch "to ascertain,

when the suit was brought," "with any further information which" he could "obtain"—that on the 6th, Hatch replied to this, saying, "we have not been able to see the attorney, to-day, —will do so to-morrow if possible"—that on the morrow, the 8th, Hatch wrote again, saying "the attorney here knows nothing of the case, Ruse, Patten & Co. vs. your Bank, only, that the suit was brought in Muscogee county, and that he was requested to garnishee this bank. He, will, however, write for information, and when received, I will advise you" —that Breese wrote, to Hatch, for the promised information several time, prior to the 16th—that, on the 16th, Hatch, wrote to Breese, saying, "Mr. attorney Barnes, has received no reply from his letter to Columbus, relative to the case of Ruse, Patten & Co. He thinks, you had better write to a law- yer in Columbus, at once, to look into the matter." This was but three days before the day of the judgment, the 19th, and the letter, it is probable was not received by Breese until the next day—two days before the judgment. Soon after- wards, Breese, taking the advice of Barnes, the attorney of Ruse, Patten & Co., did employ "a lawyer in Columbus," but it was too late; the judgment had, then, been rendered.

These facts are shown by the bill. There are some others, which the law will assume;—namely, that a copy of the at- tachment, with the affidavit and bond, was transmitted to Richmond county, and was on file in the Superior Court, there, at the time when Mr. Barnes, the attorney for Ruse, Patten & Co., was applied to by Mr. Hatch, for information about the suit; and, that this was known to Mr. Barnes. *Sections* 47, 48 *of the Attachment Act of* 1856.

Now these papers contained all the information the com- plainant needed; their existence was known to Mr. Barnes, and they were within easy reach of him.

These things being so, by whose fault was it, that the com- plainant did not receive information of the suit, time enough to enable him, to put in his defence to it? By his fault or by the fault of the defendants or their attorney? By the

Farmers and Exchange Bank vs. Ruse, Patten & Co.

fault of the defendant's or their attorney, we think. The suit being by attachment, did not of itself make itself known to the complainant. Certainly, it was owing to no fault in the complainant, that the complainant did not hear of the suit, until the 3d of December, sixteen days before the judgment was rendered. And the complainant's conduct consequent on the news of the suit, was equally free from fault. The complainant instantly set about acquiring the information necessary to enable it, to act on the defensive. It caused inquiry about the suit, to be made of the defendants attorney, in the suit; it obtained a promise from him, to procure and furnish the desired information; it relied on this promise, eight days—not an unreasonable time—and, surely, it had the right to rely on a promise of the defendant's own attorney. At the end of the eight days, the attorney let it be known, that he had failed to procure the information. This was within two or three days of the judgment, when it was too late, to do any thing. The failure, then, to put in the defence, was not owing to any fault in the complainant. It was owing, as we think, to fault in the attorney of the defendants, or fault in themselves. Why did he say, he should have to write to Columbus for information, when he might have referred the applicant for the information, to the papers of file in the Clerk's office in Richmond? Why, as he did write to Columbus for information, did the defendants there, not remit it to him? The time for judgment in their suit, was near at hand—the Court being in session. Did they dread a defence to their suit, and withhold the information lest it might be the means of bringing about a defence to the suit? We think that there was fault here, either wilful or negligent.

Our conclusion then is, that the statements in the bill, do show; first, that the complainant, did have a defence to the suit at law; 2ndly, that, those statements, taken in connection with facts of which, the Court itself takes notice, do also show, that the failure of the complainant, to put in this

defence, was owing, not to any fault in the complainant, but to fault in the defendants, or fault in their attorney. Consequently, we think that there was equity in the bill.

The next question is, was this equity sworn off, by the answers? We are not prepared to say, that it was. On the great question—the authority of Taylor, to certify or accept the check, the answer seems to make this case: viz, that Taylor was at one time the agent for the complainant, and if his authority had ever been withdrawn, they did not know of it; and further, that he was still held out to the world, as agent, at the time he certified or accepted the check. But we are not satisfied, that this answer ought to dissolve the injunction, for 1st, the fact, if it was a fact, that Taylor was still held out as agent, seems to be new matter rather in avoidance of, than in response to, the bill; and 2ndly, we think it a question for the jury, whether, under the facts even as stated in the answer, the defendants ought not to have been presumed to know that Taylor acting as he did, was exceeding his authority.

The defendants are insolvent. It is better, we think, that the injunction be held up, until a trial.

Consequently, our conclusion is that the Court, below erred in dissolving the injunction.

Judgment reversed.