## POULLAIN *vs.* POULLAIN *et al.*

1. A general objection to the admission of certain books in evidence, without specifying any ground therefor, is insufficient to furnish a ground for a motion for a new trial.

(*a*) In this case, no ground of objection to the evidence offered appears to this court.

2. Where, in a suit between certain wards and their guardian, the defendant offered in evidence an award, and it appeared therein that the defendant acted both individually and as guardian for his wards in making the submission, and that they were not represented by a guardian *ad litem* or next friend, if the wards had an interest in the subject-matter of the arbitration, the attitude of the guardian towards them was inconsistent, and the award was not admissible in evidence against them.

(*a*) Where an arbitration and award was had to settle the title to certain mill property and to permit its sale, in a subsequent suit, brought by certain wards against their guardian, claiming that a gift of a portion of the income of the property had been made to them, and seeking to recover such part of the income as went into the hands of their guardian, the award was not admissible in evidence against them.

3. If it were error to permit counsel, in his argument to the jury, to read and comment upon certain portions of the decisions rendered by this court when the case was formerly before it, the failure to object thereto or to invoke any ruling of the court to check or control it, would operate as a waiver of any exception to this mode of argument.

4. The charges of the court set out in the eleventh, twelfth, thirteenth, fourteenth and fifteenth grounds of the motion for a new trial were in strict accord with the decision of this court when the case was formerly before it, and the finding of the jury under each of them was sustained by the evidence.

5. Where a bill did not set up title to certain mill property, but claimed a portion of the dividends arising therefrom, which the defendant received as the guardian of the complainants, there was no error in refusing to charge that, if the jury believed from the evidence that the defendant gave the property to his children and grandchildren, and that they were entitled to the dividends therefrom by reason of the fact that the title to said property vested in them under said gift, then said dividends were a part of the increase and not the *corpus* of his wards' estate, and it was not necessary for defendant to get an order of the court to allow him to expend the same for the support and education of his wards.

(*a*) This charge was also properly refused because the guardian had

no right to appropriate the whole of the income to the maintenance and education of his wards, especially as he had made no returns to the ordinary showing the amount of such expenditures and the receipts therefor, and had not received the ordinary's sanction to this disposition either before or after it was made, no account of the expenditures being kept, and the amount claimed as a credit on that account being a mere guess.

(b) Where it appeared that the owner of certain mill property had placed it in the hands of two of his sons for the purpose of managing it, receiving the income and proceeds thereof and paying them over to the donor's children and grandchildren; that such agents or trustees kept accounts of their transactions, and the money was disbursed by them to all of his children who were in life and to the children of such of his sons as were dead, except to the complainants, who were the children of a deceased son, and that the amount coming to them was paid into his hands as their guardian, this was sufficient to show a complete gift; and there was no error in charging that, if the defendant placed his two sons in charge of the mill property as the agents of his children and grandchildren, intending and directing that they should share equally in the income and dividends produced, the complainants would be entitled to recover their share of such dividends, if any, which may have been delivered to the defendant for them.

(c) A *donatio inter vivos* as distinguished from a *donatio mortis causa*, does not require actual delivery, and it is sufficient to complete a gift *inter vivos* that the conduct of the parties should show that the ownership of the chattels has been changed.

6. When this case was before this court at a former term, on the same evidence as now appears in the record in respect to the discharge of the guardian as to one of his wards, it was held that matters short of actual fraud existed, which were sufficient to set aside the discharge, and there was no error, on another trial, in charging that such complainant claims that the discharge was procured by fraud on the part of the defendant, and is therefore an invalid judgment and no bar to her right of recovery in this case; and the fraud relied on to set aside said discharge is legal and not moral fraud; and that legal fraud does not impeach the honesty of the defendant, and may be proved by acts consistent with an intention on his part to do right.

7. Where a witness was examined on behalf of the complainants and cross-examined by defendant's counsel on the trial, there was no error in refusing to grant a new trial on the ground that it had since been discovered that such witness would testify to sayings of the respondent repudiating the gifts in issue on the trial, made after he had parted with possession of the property; especially

where no diligence was shown in procuring this testimony, its admissibility was doubtful, and at best it was merely cumulative.

April 21, 1887.

Evidence. Guardian and Ward. Arbitration and Award. Attorney and Client. Practice in Superior Court. Charge of Court. Gifts. Title. Judgments. New Trial. Evidence. Before Judge LAWSON. Greene Superior Court. September Adjourned Term, 1886.

On the first trial of this case in the superior court, a verdict for the complainants was rendered, and a new trial was ordered, on motion of the defendant. On exceptions to this judgment by the complainants, it was affirmed by the Supreme Court. (See 72 *Ga.* 412.)

On the second trial, the jury found for the defendant. The complainants moved for a new trial, which was refused, and they excepted, and the judgment was reversed by the Supreme Court. (See 76 *Ga.* 420.)

On the third trial, the jury found for the complainants $6,666.66. The defendant moved for a new trial, which was refused, and he excepted.

J. A. BILLUPS; H. G. LEWIS; D. B. SANFORD, for plaintiff in error.

JAMES B. PARK; JOHN C. REED; F. C. FOSTER; J. H. LUMPKIN, for defendants.

HALL, Justice.

This case was tried on nine exceptions made by the complainants to the auditor's report. The first exception taken to the finding was in relation to a house and lot in Greensboro, which, it was alleged, had been purchased by the respondent for the complainants, and with their means, and held by him as their trustee. The finding was against this allegation and was, that the respondent did not hold the same in trust for them, but that he held it in

his own right until March, 1879, when he conveyed it to their mother.

The second exception was to the finding of the auditor in relation to the plantation in Floyd county, Georgia. That finding negatived a gift of this property by the respondent to the father of the complainants.

The third was as to the finding of the auditor that the respondent had been duly and legally discharged by the ordinary of Greene county, from the guardianship of one of the complainants, Anna Maria Poullain, now Mrs. Park.

The fourth exception was to the finding that Mrs. Park was barred, by reason of the discharge of the respondent, from this guardianship by the ordinary.

The fifth exception was to a finding by the auditor that one of the complainants, Miss Hallie B. Poullain, now Mrs. Lewis, was disabled from bringing this suit on account of her infancy. He held that she could not prosecute against her guardian by *prochien ami* during his guardianship and before it was wound up.

The next, the sixth exception, was to the report of the auditor, which denied the right of the complainants to receive any portion of the income that had arisen from the Fontenoy mills, which, the bill alleged, had been given to the children and grandchildren of the respondent (including complainants).

The seventh is an exception to the report denying the complainants' right to the Floyd county land, and is in substance the same as the finding assailed by the second exception.

The eighth exception attacks the amount reported in favor of the complainants in a certain contingency mentioned in that report. But in consequence of the result reached, this is not, as to the amount, a very material exception.

The ninth exception attacks the amount found to have been expended by the respondent for the maintenance and education of the complainants during their minority.

The jury passed upon each of these exceptions separately, and found on each of them in favor of the complainants. On the second, they found due the complainants, $4,666.60, arising from the sale of the Floyd county land. On the sixth, they found due the complainants, $2,000, on account of their interest in the income from the Fontenoy mills, and which the evidence had traced into the hands of the respondent as their guardian.

After considering all the exceptions, they gave a general verdict, in which they stated that they reached this conclusion by considering these exceptions one at a time. They found for the complainants the aggregate sum of $6,666.66, that being the amount due after deducting (in round numbers) the price of the house and lot purchased in Greensboro from the amount that they were entitled to receive from the sale of the plantation in Floyd county. On this finding, the court decreed that each and all of these exceptions be sustained, and that the complainants recover the amount of $6,666.66, with interest from the date of the decree, and their costs.

This case has been twice before this court : first, at the February term, 1884 (reported in 72 *Ga.* 412); again it was here at the March term, 1876 (76 *Id.* 420). And although these decisions settled the law arising upon the most material questions in the case, it was insisted that others arose on the last trial which had not been heretofore passed upon, and which would entitle the defendant, on account of erroneous charges and rulings made by the judge, to another hearing. Therefore a motion for new trial was made upon numerous grounds, but upon all of them it was refused.

The first seven grounds insist that the verdict was contrary to law and evidence, and against equity, and especially in sustaining the 1st, 2d, 3d, 6th and 9th exceptions to the auditor's report. The 8th alleges errors in admitting the books of the Fontenoy Mill Company, which books were kept by Antoine and Thomas Poullain, to whose care

these mills had been confided for the purpose of making income for the children and grandchildren of the respondent in this bill, and for their benefit; and also in admitting Antoine Poullain's evidence in relation thereto over objection.

1. That ground may be disposed of at once, inasmuch as it fails to urge any specific objection to the admissibility of this testimony. There seems to have been a general objection to its admission, without specifying any reason why it was not competent testimony. We discover no ground ourselves why it was not pertinent and competent to illustrate the main issues on trial.

2. The 9th ground insists that there was error in rejecting an arbitration and award offered by the defendant, in relation to his title to the Fontenoy mills, and his right and authority to make sale of the same. We agree with the court that this testimony was not admissible: (1) because the complainants were in no proper or legal sense parties to the submission. It is true that the defendant was the party of the first part, and that his children and grandchildren were named as parties of the second part; but these complainants were represented by him as their guardian. Even if they had an interest in this case, his attitude towards them was inconsistent. They were represented by no guardian *ad litem* or next friend in this arbitration. (2) Because, according to the allegations in their bill, they had no sort of interest in the subject-matter of this arbitration. It was brought about to settle the title to the property in these mills, and to enable Dr. Poullain, the respondent in this bill, to sell the Fontenoy mill property. These parties set up no title in their bill to the property itself, but only to such of the income of the property as went into the hands of the defendant as their guardian.

3. The 10th insists that there was error in allowing complainant's counsel, in his argument to the jury, to read and comment upon certain portions of the decision rendered

by this court when the case was last here. The judge certifies that no exception was taken by the defendant to this course at the time it occurred, and no appeal was made to him to check or control it. The parties sat by and saw it going on, and kept silent, and by their conduct waived any exception to this mode of argument, even if it was irregular and objectionable, but we do not decide that it was.

4. The 11th, 12th, 13th, 14th and 15th grounds of the motion state that the verdict is contrary to certain charges. of the court, which each of these grounds sets forth. It is only necessary to remark that those charges were each and. every one of them in strict accordance with the decision rendered by this court at the March term, 1886, in relation to the character and amount of testimony necessary to establish the gifts to this property. What we then declared to be the law was strictly followed in the instructions given. on this occasion by the court to the jury. The charges were then and are now justified by the testimony, and the finding under each of them was sustained by the evidence.

5. The 16th and 18th grounds of the motion relate to the same subject, and may be conveniently considered together. As they relate to the most material questions in dispute between the parties, it will be well to copy them from the record. The 16th alleges that the court committed error in giving this charge to the jury: "If the defendant placed his sons, Antoine and Thomas, in charge of the Fontenoy mills property as the agents of his children and grandchildren, intending and directing that they should share equally in the income and dividends produced, the complainants would be entitled to recover their share of such dividends, if any, as may have been delivered to the defendant for them." The error alleged in this charge is that it was not authorized by the evidence.

The 18th ground of the motion alleges that the judge committed error in refusing to charge, at the request of the respondent's counsel in writing: "If the jury believe from

v 79-2

the evidence that the defendant gave the Fontenoy mills property to his children and grandchildren, and that they were entitled to the dividends therefrom, by reason of the fact that the titles to said property vested in them under said gift, then said dividends were a part of the increase and not the *corpus* of his wards' estate, and it was not necessary for defendant to get an order of the court to allow him to expend the same for the support and education of his wards." The request of defendant's counsel to give the above charge was made after the court had concluded his charge to the jury, and in response to an inquiry of the court if there was any other matter upon which counsel desired the court to instruct the jury.

We think the court did right to refuse this request, (1) because the complainants did not set up any title to this Fontenoy mills property; they set up a claim to the dividends that arose from the property, and which came into the hands of the defendant, and which he received as their guardian; (2) because if he received it as their property, he had no right to appropriate the whole of the income to their maintenance and education, especially as he had made no return to the ordinary showing the amount of such expenditures and the receipts therefor, and had not received the ordinary's sanction previous to the disposal of this amount of money, or after it was disposed of for those purposes; no account of the expenditures was kept; the amount claimed as a credit on that account was a mere guess, and was unsupported by evidence.

Going back to the 16th ground of the motion with this explanation, we think there was evidence of the gift and of the consummation of the gift. There was evidence that he had placed this property in the hands of two of his sons, Antoine and Thomas Poullain, for the purpose of managing it, receiving the income and proceeds from it, and paying over that income and those proceeds to these parties. Those agents or trustees, in whichever character they acted, kept accounts of their transactions; the money

was disbursed by them to all of the children of the respondent who were in life, and to the grandchildren, the children of such of his sons as were dead, save and except to these complainants, and the amount coming to them was paid into his hands as their guardian. This fact, we think, was satisfactorily established by the evidence of the surviving children and the other parties testifying in the case, especially by that of Antoine Poullian, and that furnished by entries on the books which he and his brother kept of the income and disbursements of this Fontenoy Mills property. There is some ambiguity in these books. For instance, there are items showing certain amounts paid to the estate of Junius Poullain, the father of the complainants; but it is very evident from this record that Junius Poullain was dead at the time this gift was made, and that it was made directly to his children as a portion of the grandchildren of the donor.

The great point insisted upon in the argument of respondent's counsel was, as to the incompleteness of the gift for the want of delivery of the thing donated. But upon that point we have no difficulty at all. To constitute a valid gift, there must be the intention to give by the donor, acceptance by the donee and delivery of the article given, or some act accepted by the law in lieu thereof. Code, §2657. A parent, guardian or friend may accept for an infant. *Id.* §2658. Actual manual delivery is not essential to the validity of a gift. Any act which indicates a renunciation of dominion by the donor, and the transfer of dominion to the donee, is a constructive delivery. Code, §2660. But going outside of the code, the principles announced here had, as we take it, been settled by decisions both by common law courts and courts of equity long prior to the adoption of the code.

It has been held that a *donatio inter vivos*, as distinguished from a *donatio mortis causa*, does not require actual delivery, and it is sufficient to complete a gift *inter vivos* that the conduct of the parties should show that the

ownership in the chattels. has been changed. Florey *vs.* Denny, 7 Exch. 583; Ward *vs.* Audland, 16 M. & W. 862.

Again, where a cheque was given by A. to B. and presented without delay, the bankers had sufficient assets of A., but refused payment, because they doubted the signature. The next day A. died, the cheque not having been paid. It was held by Sir John Stuart, V. C., to be a complete gift *inter vivos* of the amount of the cheque, and he ordered its payment, with interest, by the executors of the donor. Bromley *vs.* Brunton, 6 L. R. Eq. 275.

In Grant *vs.* Grant, 34 Beav. 623, it is held that, "in order to establish the fact of a gift of chattels from a husband to his wife, there must be clear and distinct evidence corroborative of the wife's testimony. It is not necessary that he should deliver them to a trustee for his wife. It is sufficient if he constitutes himself a trustee for her by making the gift in the presence of a witness, or by subsequent statements to a witness that he has made the gift."

So in *ex parte* Pye, *ex parte* Dubost, 18 Ves. 140, 145, Lord Eldon held that, although there had been no actual transfer of the legal interest in the property to trustees, yet if the settler had constituted himself a trustee for volunteers, a court of equity would enforce the trust.

In Wheatley *vs.* Purr, 1 Kee. 551, H. O. directed her bankers to place £2,000 in the joint names of her children, J. R. W., M. W. and H. W., and her own as trustee for her children. That sum was accordingly entered in the books of the bankers to the account of H. O. as trustee for her said children. The bankers gave her, as such trustee for the children named, a promissory note for the amount with interest, and she gave the bankers a receipt for the same. Lord Langdale, M. R., was of opinion that she had constituted herself a trustee for the plaintiffs, her children, and that a trust was completely declared, so as to give them a title to relief.

These cases and a number of others illustrating this principle, will be found in the notes to Ellison *vs.* Ellison,

1 White & Tudor's Leading Cases, marginal pages 260–262.

6. The 17th ground of this motion alleges error in the charge to the jury to this effect (and this charge was made in reference to the judgment of the ordinary discharging the respondent from the guardianship of Mrs. Park, one of the complainants): "The complainant, Anna M., claims that such discharge was procured by fraud on the part of the defendant, and is therefore an invalid judgment, and no bar to her right of recovery in this case." (That was one of the grounds set up in her bill. But there were other reasons alleged why this discharge was invalid and afforded no bar to the prosecution of her rights in this suit.) "The fraud relied on," said the judge, "to set aside said discharge is a legal and not a moral fraud." (That is, as we understand this, that the fraud that the parties relied on at the trial to set aside the discharge, was a legal and not a moral fraud.) "Legal fraud," he continues, "does not impeach the honesty of the defendant, and may be proven by acts consistent with an intention on his part to do right." The objection to the charge was that it was not authorized by the evidence, and had a tendency to prejudice the defendant's case.

The evidence on this trial, in relation to this matter, was precisely the same as it was when this case was here at the March term, 1886. It was then very carefully considered by this court, and we held that matters short of actual fraud existed in this case which were sufficient to set aside this discharge; there was no error, therefore, in the charge excepted to in this ground of the motion.

7. That leaves only the ground in relation to newly discovered evidence to be considered. The party who furnished the newly discovered evidence was a witness in this case; he was examined and cross-examined, and gave testimony on the trial. At best, it is capitally doubtful if the evidence that purports to be newly discovered evidence would have been admissible if it had been offered.

It consisted of the sayings of this respondent repudiating the gifts in question, which were made, as we are authorized to infer, when he had parted with possession of the property.   But again, no diligence was shown in procuring this testimony ; no interview was had with this witness. It is true, he was a witness for the complainants, and helped to make out a part of their case, but we are satisfied that the evidence offered was merely cumulative of that which had been given on the trial.

For all these reasons, we think there was no error in refusing this motion for new trial.   We perceive none whatever, that this respondent can complain of, in the several rulings of the judge and in the several charges to which exception was taken, and to those which it is alleged the jury disregarded in their findings of the issues submitted ; and we therefore order the judgment affirmed.