WHITE, administratrix, *v.* ROPER *et al.; et vice versa.*

Nos. 9032, 9044. DECEMBER 19, 1932.

*R. Carter Pittman* and *Wright & Covington,* for plaintiff.

*Rosser & Shaw, Julius Rink,* and *Maddox, Matthews & Owens,* for defendants.

BELL, J.  This was a suit in equity brought by Joe Roberson as administrator of the estate of his deceased wife, Mrs. Grace Williams Roberson, to cancel and set aside a judgment discharging J. A. Roper as administrator of the estate of Fred Williams, and to recover of Roper and the security upon his bond a sum of money alleged to be due to the estate of Mrs. Grace Williams Roberson, who before her marriage to Joe Roberson was the surviving widow and sole heir at law of Fred Williams.  The fund in controversy represented the cash proceeds of a certicate of insurance issued on the life of Fred Williams by the United States Government through the Bureau of War-Risk Insurance, and the basal right of recovery depended upon a determination of whether under Federal statutes this fund was payable to the brothers and sister of Fred Williams or to the estate of his surviving widow.  Roper and his surety, Continental Casualty Company, each demurred generally and specially to the petition.  The court, after allowing the petition to be amended, overruled these demurrers upon all grounds, and the defendants excepted pendente lite.  The court also overruled a motion of the plaintiff to strike certain portions of the defendants' answers, after which the case proceeded to trial and resulted in a judgment of nonsuit.  The plaintiff then brought the case to this court, assigning error upon the two orders last referred to; and the defendants followed with a cross-bill, assigning error upon the overruling of their demurrers to the petition.  After the case reached the Supreme Court, the death of Joe Roberson was suggested, and Miss Rep White as administratrix of the estate of Mrs. Grace Williams Roberson was made a party in his stead.

The petition as amended contained the following allegations: Fred Williams, who was a soldier in the United States Army during the World War, died intestate on October 3, 1918, after taking out a war-risk insurance policy in which he named his wife Grace Williams as the beneciary.  He left no child, but was survived only by his widow, who subsequently married Joe Roberson.  Grace William Roberson died intestate on May 14, 1930, leaving her second husband, Joe Roberson, and a minor child born of her second marriage, as her sole heirs at law.  This child was about seven

years of age at the time the present suit was instituted. In August, 1930, Roper was appointed administrator of the estate of Fred Williams, and qualified as such, Continental Casualty Company becoming surety upon his bond. Roper as administrator thereafter received from the United States Government the sum of $4684.71 as the computed unpaid proceeds of the war-risk insurance policy. On November 26, 1930, Roper as administrator filed his application in the court of ordinary for letters of dismission, accompanied by a final return from which it appeared that he had paid the fund, less expenses of administration, to his wife, Mrs. Missouri Roper, and to Sam Williams and R. L. Williams, the sister and two brothers respectively of the deceased soldier. At the January term, 1931, of the court of ordinary an order was passed discharging Roper as administrator. A copy of the application for discharge was attached to the petition, and contained the statement that the applicant had paid all the debts of the intestate and had turned over the residue "to the lawful heirs of Fred Williams." A copy of the order of discharge was also attached as an exhibit, and recited "a thorough examination of all proceedings" and a determination that the administrator was "legally entitled to a discharge from his administration."

About six months after Roper was discharged as administrator of the estate of Fred Williams, Joe Roberson qualified as administrator of the estate of his deceased wife, Mrs. Grace Williams Roberson, and made a demand upon Roper and his surety that they pay to him in his representative capacity the net proceeds of the insurance policy, which demand was refused. The petition alleged that Roper obtained his discharge as administrator by means of a fraud practiced on the heirs at law of Fred Williams and the ordinary, as follows: "Said defendant falsely and fraudulently represented to the ordinary that he had fully and faithfully discharged all the duties of such administration, that he had paid all debts and turned over to the lawful heirs of Fred Williams, and he fraudulently concealed from the ordinary the fact that the persons to whom the distribution had been made as set out in his return were not and had never been the lawful heirs of Fred Williams. . . The estate of Fred Williams owed no debts except the costs of administration of the estate, and the whole of the balance left in defendant Roper's hands, after the payment of such

lawful costs, became payable to the estate of Grace Williams Roberson under the laws of descent and distribution of [this] State. Yet defendant J. A. Roper made no distribution to the estate of Grace Williams Roberson or any of her heirs." Further allegations as to fraud were made by an amendment, as follows: "At the time said return was made by the said defendant J. A. Roper to the court of ordinary, stating that he had 'paid all of the debts of his intestate, Fred Williams, has turned over the residue on his books to the lawful heirs of Fred Williams,' that said representation so made by the said J. A. Roper was false and fraudulent, in that at said time the heir at law of the said Fred Williams was his wife, Mrs. Grace Williams Roberson, and that the said J. A. Roper knew at said time that the said Mrs. Grace Williams Roberson was the sole heir at law of Fred Williams and that the said Fred Williams had died intestate, leaving surviving him his said wife and no children, and that the said J. A. Roper was chargeable as a matter of law with knowledge that the said relationship so existing constituted the said Mrs. Grace Williams Roberson the sole heir at law of the said Fred Williams, but that notwithstanding said fact the said J. A. Roper falsely and fraudulently represented said facts to the court of ordinary and represented to the court of ordinary that the settlement made by him with his own wife and with the brothers-in-law, Sam Williams and R. L. Williams, was a settlement with the heirs at law of the said Grace Williams Roberson, and the said J. A. Roper knew at said time that said statement was false and knew that said named persons were not the heirs at law of the said Fred Williams, but that the said Mrs. Grace Williams Roberson was the sole heir at law of the said Fred Williams. Petitioner further shows to the court that the said J. A. Roper failed to disclose to the said ordinary of said county that the said Fred Williams died intestate, leaving surviving him his wife, Grace Williams, afterwards Grace Williams Roberson; and petitioner shows that by reason of said facts as aforesaid the said judgment of dismission was procured by the said J. A. Roper by fraud practiced by him upon the heir at law of the said Fred Williams and upon the ordinary of Walker County, Georgia, and that by reason of said fraud as aforesaid said order of discharge should be cancelled and set aside by this court."

The suit was filed more than twelve months after the qualification

of Roper as administrator. The plaintiff's contention was that the proceeds of the insurance policy were payable, not to the sister and brothers of Fred Williams, but to his widow, or at her death to her legal representative for the benefit of her own heirs at law, consisting of Joe Roberson and the minor child born of the second marriage.

The grounds of the general demurrers to the petition were based upon the contentions (1) that even according to the allegations of the petition the fund had been paid to the proper parties by Roper as administrator; and (2) that the averments of the petition were insufficient to show fraud. The special demurrers were aimed at the particular allegations made for the purpose of showing fraud, and attacked them as being mere conclusions of the pleader. By the allegations of the answers, which were objected to by the plaintiff's motion to strike, the defendants pleaded the following as affirmative defenses: (1) Under applicable Federal statutes, the fund was payable to the sister and brothers of Fred Williams, and the estate had been properly administered accordingly. (2) Prior to the distribution of the estate, Joe Roberson was fully informed by Roper and his attorney as to this construction of the law, and was urged, if he had a different opinion, to file, in behalf of himself and his child, a claim to the fund in the court of ordinary; but he failed and refused to file any such claim and allowed the estate to be administered as alleged in the petition, and without filing any objection permitted Roper to be discharged as administrator; and in these circumstances Joe Roberson is now estopped in law and in equity from instituting this suit and from asserting that the fund was improperly or illegally distributed and that the discharge of Roper was obtained by fraud.

The evidence supported all the material allegations of the petition, unless there was a failure to show fraud. Upon this latter question, it appeared from the evidence that Joe Roberson had personal knowledge of all of the pertinent facts during the entire process of the administration, including the order of discharge, except that he did testify that he went to see Mr. Rink, Roper's attorney, "before this money was paid out," and was told that "the money was here and would be held until some understanding was taken about it, where it was going; and the next thing [he] knew it had been paid out." The testimony of the ordinary tended to

show that he was fully aware of the various relationships; and for the purpose of this case it may be assumed that he acquired this information by evidence introduced by the defendant Roper upon the hearing of his application for the discharge.

We will first consider the petition and the demurrers. Was the petition correct in its conclusion that on the facts stated the computed unpaid proceeds of the war-risk insurance policy were payable to the estate of Mrs. Grace Williams Roberson, who survived her husband, Fred Williams, the insured? Williams died intestate on October 3, 1918, without children. In the course of time his widow married Joe Roberson, and as a result of this marriage a child was born. Thereafter Mrs. Grace Williams Roberson died intestate, survived only by her second husband and this child. Roper then obtained letters of administration of the estate of Fred Williams, and collected the insurance money. What was he to do with it? He distributed the fund, less expenses of administration, to the sister and brothers of Fred Williams. Was this a lawful administration of the estate, or should he have held the fund for payment to the legal representative of the estate of Mrs. Grace Williams Roberson? Under the war-risk insurance act as amended, where the beneciary dies before receiving all of the installments of the war-risk insurance, the remainder "shall be paid to the estate of the insured," and the heirs or distributees must be ascertained as of the date of the insured's death. *Coleman* v. *Harrison,* 168 *Ga.* 859 (149 S. E. 141); *Tolbert* v. *Tolbert,* 41 *Ga. App.* 737 (2) (154 S. E. 655). While there may be decisions to the contrary, the United States Supreme Court, which is the final authority in such cases, recently held that where the beneficiary of a war-risk insurance certificate survives the insured but dies before receiving all of the installments which are payable and applicable, the estate of the insured is "wholly substituted as the payee," and that all of such payments become "assets of the estate of the insured upon the instant of his death, to be distributed to the heirs of the insured in accordance with the intestacy laws of the State of his residence, such heirs to be determined as of the date of his death, and not as of the date of the death of the beneficiary." Singleton *v.* Cheek, 284 U. S. 493 (52 Sup. Ct. 257, 76 L. ed. 419, 81 A. L. R. 923). In that case the pertinent Federal statutes were cited and construed, and it is unnecessary to make further refer-

ence to them here. According to the laws of this State as applied to the facts alleged, Mrs. Roberson was the sole heir at law of the insured. It follows that the petition shows a wrongful disposition of the fund in controversy, in that payment should have been made, not to the sister and brothers of the insured, but to the legal representative of the estate of Mrs. Roberson.

■ Were the averments of the petition sufficient to show that a fraud was practiced upon the heirs at law or the ordinary? The petition alleged, in effect, that the defendant falsely and fraudulently represented to the ordinary that he had fully and faithfully discharged all of the duties devolving upon him as administrator by paying the net proceeds of the estate to the lawful heirs, and concealed from the ordinary the fact that the persons to whom the distribution had been made were not and never had been the lawful heirs of Fred Williams; and that these representations were fraudulent, because the only heir at law of Fred Williams was his wife, Mrs. Grace Williams Roberson, and the defendant Roper "knew at said time that the said Mrs. Grace Williams Roberson was the sole heir at law of Fred Williams," and yet failed to disclose these facts to the ordinary. Under repeated decisions by this court, the allegations were sufficient to make a case of fraud and to show cause for setting aside the judgment discharging Roper as administrator,—certainly so as against the general demurrers. Civil Code (1910), § 4091; *Seagraves* v. *Powell Co.,* 143 *Ga.* 572 (4) (85 S. E. 760) ; *Pass* v. *Pass,* 98 *Ga.* 791 (25 S. E. 752) ; *Pollock* v. *Cox,* 108 *Ga.* 430 (2) (34 S. E. 213) ; *Neal* v. *Boykin,* 129 *Ga.* 676 (59 S. E. 912, 121 Am. St. R. 237) ; *Hamilton* v. *Bell,* 161 *Ga.* 739 (132 S. E. 83) ; *Morris* v. *Johnstone,* 172 *Ga.* 598 (8) (158 S. E. 308). The recitals contained in the judgment of discharge constituted no obstacle in the plaintiff's way, but could be contradicted if a fraud was perpetrated as alleged in the petition. *Davis* v. *Albritton,* 127 *Ga.* 517 (56 S. E. 514, 8 L. R. A. (N. S.) 820, 119 Am. St. R. 352). The allegations of the petition were not subject to the objections made by the special demurrers that they amounted only to conclusions of the pleader. The complaint did not stop with a mere general allegation of fraud, but the representations and acts constituting the alleged fraud were specified in the petition and were stated with sufficient particularity.

The present case, like *Mullis* v. *Bank of Chauncey,* 40 *Ga. App.*

582 (150 S. E. 471), is distinguished from that of *Knox* v. *Raynor*, 146 *Ga.* 146 (2) (90 S. E. 853), where the only allegation which tended to show fraud was that the administrator had paid debts "inferior in dignity to that of the plaintiff." The petition may have been drawn with a conscious intention to invoke the provision contained in the Civil Code, § 4091, to the effect that "a discharge obtained by the administrator by means of any fraud practiced on the heirs or the ordinary is void, and may be set aside on motion and proof of the fraud." While this section seemingly refers to a motion in the court of ordinary which granted the discharge, the action, on the facts alleged, can be sustained under the general rule that a judgment may be set aside for fraud, in a court of equity, a judgment of the court of ordinary being no exception to this rule. Civil Code (1910), §§ 4584, 5965; *Mobley* v. *Mobley*, 9 *Ga.* 247; *Loyless* v. *Rhodes*, 9 *Ga.* 547 (3). The court did not err in overruling the general and special demurrers to the petition. The judgment of discharge is not attacked as being invalid because obtained within less than twelve months from the qualification of the administrator, and no decision is made upon that question. See, in this connection, Civil Code (1910), §§ 3997, 3999, 4073.

We will next consider the question whether the evidence was sufficient to avoid a nonsuit. It was shown by the record evidence, namely, the application for the discharge, that Roper as administrator represented that he had settled with the lawful heirs of his intestate. The application did not show that the insured was survived by a widow, but, considered with the final return, stated without qualification that the sister and brothers were the heirs at law. Even if the administrator fully disclosed the facts to the ordinary upon the hearing of his application, and could thus be held free from fraud as respects that officer, it remains true that his application averred as a fact that he had settled with the heirs at law, and that in this way he obtained a judgment which appeared to be based upon proper facts, and which was therefore conclusive and binding upon all parties concerned, unless it should be set aside in some appropriate proceeding. *Head* v. *Bridges*, 67 *Ga.* 227; *Jones* v. *Smith*, 120 *Ga.* 642 (2) (48 S. E. 134); *Wicker* v. *Howard*, 126 *Ga.* 119 (54 S. E. 821). It thus appeared that, regardless of whether a fraud was practiced upon the ordinary, a

wrong was committed upon the unrepresented estate of Mrs. Roberson; and this alone, if it amounted to a fraud, was a sufficient cause for setting aside the discharge. The administrator was presumed to have known the law; and under all the evidence a finding in favor of the plaintiff on the issue of fraud would have been authorized. *Poullain* v. *Poullain,* 79 *Ga.* 11 (6) (4 S. E. 81); *McIntosh* v. *Hambleton,* 35 *Ga.* 95 (89 Am. D. 276); *Christian* v. *Westbrook,* 75 *Ga.* 852 (2); *Skrine* v. *Simmons,* 11 *Ga.* 401 (3); *Culbreath* v. *Culbreath,* 7 *Ga.* 64 (50 Am. D. 375); *Farmers & Exchange Bank* v. *Ruse,* 27 *Ga.* 391; *Atlanta Trust Co.* v. *Nelms,* 116 *Ga.* 915 (2) (43 S. E. 380).

The fact that Joe Roberson in his individual capacity may have had knowledge of all of the acts and contentions of Roper and of all proceedings had in the course of the administration, including the application for and the order of discharge, did not remove or excuse the element of fraud in the conduct of Roper. In *Pollock* v. *Cox,* supra, this court held as follows: "An adjudication that a given applicant for letters of administration upon the estate of a deceased person (the application, of course, being made by him in his individual capacity) was not, for reasons alleged in a caveat to his application, entitled to such letters, constitutes no estoppel against this same person in his capacity as administrator of an heir at law of the decedent upon whose estate he sought to administer." In *Rusk* v. *Hill,* 117 *Ga.* 722 (8) (45 S. E. 42), the following ruling was made: "When an administrator, without consulting the heirs of his intestate, allows one not an heir to participate with them in the distribution of the assets of the estate he represents, he does so at his peril; and the lawful heirs are not estopped from subsequently calling upon him for a legal accounting and settlement, notwithstanding they may have known of such misapplication of trust funds and raised no objection thereto, if at the time they ignorantly supposed he was properly administering the estate and in no way misled him into the belief that he was acting with their approval and consent." See also *Davis* v. *Bagley,* 40 *Ga.* 181 (2 Am. R. 570). Despite any knowledge which may have been possessed by the plaintiff as an individual as to the defendant's conduct and contentions, the evidence was sufficient to show such fraud as would authorize the grant of equitable relief to the plaintiff as administrator; and under the proof as submitted there was

no estoppel against the plaintiff in his representative capacity wherein he represented not only himself but also the minor child. Since a verdict for the plaintiff would have been authorized, the court erred in granting the nonsuit.

■ Under the rulings stated above, the allegations by which the defendants sought to plead certain affirmative. defenses failed to show any ground of defense, and the plaintiff's motion to strike these portions of the answers should have been sustained.

*Judgment on the main bill of exceptions reversed; on the cross-bill affirmed. All the Justices concur.*