Hill *vs.* Harris.

B. P. and J. M. HILL, plaintiffs in error, *vs.* C. J. HARRIS, defendant in error.

An injunction to restrain the enforcement of a judgment at law on the ground that there is a good defense to a part of the claim on which the judgment is founded, but said defense did not come to the knowledge of the defendant, until it was too late to set it up at law, ought not to be granted, unless the complainant tender in the bill the amount he admits to be due, and unless the bill clearly show by distinct and positive averments what the defense is, how and by whom it can be proven, and that the failure to acquire the knowledge of it before the trial at law, was wholly unmixed with any negligence on the part of the complainant, or any want of attention to the means of information within the reach of a man of ordinary prudence and discretion.

Equity.    Conclusiveness of Judgments.    Before Judge HOPKINS.    Fulton county.    Chambers, January, 1871.

The bill of B. P. and John M. Hill, filed in Coweta county, made this case: In November, 1859, B. P. Hill bought of William Mitchell certain land, and gave him therefor his promissory note for $5,450 00, due the 25th of December, 1860, with John M. Hill and one Dennis as his securities. The note was not paid at maturity.   B. P. and J. M. Hill went into the Confederate States army.   On the 1st of February, 1863, J. M. Hill paid on said note $2,500 00, in Confederate currency, then much depreciated, and had a credit for that sum entered upon the note.   Mitchell died, and his executor pressed Dennis, who was at home, to pay said note.

Dennis, as B. P. Hill's agent, learning that one Harris had Confederate money to loan, said to Harris that, if he would induce said executor to take such currency, on said note, he would borrow it from him, for said B. P. Hill.   Dennis & Harris urged upon the executor, that B. P. Hill was a soldier fighting for his country, and he ought to take said currency.   And Dennis falsely told the executor that he had sold B. P. Hill's cotton to pay said note.   The executor refused.   At last, B. P. Hill's mother and sister plied him with appeals to his patriotism, until he consented.   There-

Hill *vs.* Harris.

upon Dennis, as agent, borrowed from Harris $3,080, in such currency, and gave Harris a note for $3,080 00, signed B. P, Hill's name thereto as principal, Dennis signed it as security and so did said John M. Hill. Dennis then paid the executor the $3,080 00, on the original note, to-wit: on the 13th of March, 1863, when said currency was worth only from thirty to twenty per cent. in specie. B. P. Hill lost heavily by the war, and was compromising his debts after the war. Dennis seemed anxious to be relieved from said securityship on said last note, and Harris was pressing payment. B. P. and John M. Hill neither knew the exact facts concerning this transaction, but relied upon Harris' statements. He said that he had purchased of said executor $3,080 00, interest in said land note and the transaction was exclusively his, and that, when Dennis made said $3,080 00 note, it was simply in renewal of the land note to that extent. Harris was their friend and they had confidence in him. Dennis had become cold towards B. P. Hill, and urged Harris to have him relieved from said note. Relying upon Harris' said statements, which mislead them as to the legal effect of the transaction, B. P. Hill gave his note to Harris for $3,438 37, on the 25th of February, 1867, with John M. Hill as security, in lieu of said note for $3,080 00, and to secure it, gave a mortgage on his land, and the note for $3,080 00, was taken up. Harris foreclosed said mortgage, and sued said last note to judgment in September, 1870. Because they believed said statements of Harris, no defense was made to either of these actions. After these judgments were taken, they learned that Harris had deceived them, but the Court adjourned before they could examine all the records and the witness who could throw light on the transaction, and, therefore, no motion for a new trial could be made. Harris has had *fi. fas.* issued and levied upon B. P. Hill's land, and is about to sell the same. They prayed that the *fi. fas.* be enjoined, and that the judgments be opened and they be allowed to defend said suits upon these facts.

Among the exhibits to the bill, was a suit by the representative of Mitchell's estate, against B. P. and J. M. Hill on the $5,400 00 note, in which suit said note was averred to have been credited by $2,500 00, paid the 14th of February, 1863, and $3,080 00, paid on the 13th of March, 1863, on which they acknowledged since on the 31st of December, 1869.

Judge Bigby being sick, this bill was presented to Judge Hopkins, of the Atlanta Circuit, and he refused the injunction. That is assigned as error.

W. F. WRIGHT, E. S. DOUGLAS, by B. H. BIGHAM, for plaintiffs in error.

HUGH BUCHANON, for defendant.

Facts showing fraud must be averred: 5th Ga. R., 341. They shew no good reason for not defending at law: 1st Kelly, 136; 2d, 279, 329. The new note is binding: 40th Ga. R., 487.

McCAY, J.

We do not doubt but that, according to the statement of facts contained in this record, the plaintiff, in this common law judgment, has not a just right to so much of the same as is in excess of the value of the Confederate money advanced by him. But we are not clear that the complainant is entitled to the benefit of the acknowledged fraud practiced by Harris and Dennis upon the estate of Mitchell. Harris has received, in the credit on his note, the advantage of the payment, as though in gold. If he, still holding to his credit, gets, now, off from Harris by paying only the value of Confederate money, does he not claim the benefit of the fraud, and by adopting it become liable to the Mitchell estate for the money? Besides, if the fraud was really practiced, has not the Mitchell estate a right of action against

Harris for the damages? To make a clear case, even under the facts, the Mitchells ought to be parties to this bill, and a proffer be made to put them right. If Mr. Hill does this, his equity against Harris would be clear, unless he has lost it by his negligence.

A judgment at law ought to be conclusive on the matter in dispute. Such is not only the right of the successful party, but it is to the public interest that litigation shall end. The time of the country has already been occupied by the parties, and it is due to it that they shall not make another draft upon it, if they have negligently used the opportunity previously given them. It is rather extraordinary that Mr. Hill permitted this judgment to go against him, in ignorance of the truth of the case. In the first place, the story, it is said Harris told of his *buying* an *interest* in the note, was extraordinary; such a thing is very unusual, since the buyer has no showing, the note remaining in the hands of the holder. Again, it was Hill's duty, and always in his power to see the note. Indeed, it is apparent that long before this judgment was obtained, he had seen a copy of the note, and had the means of knowing that, in fact, instead of a *sale*, the note was *credited* with the money paid by Harris. But we do not care to go into a discussion of the whole merits of this case. We think the bill does not show that the failure of Hill to set up his defense was unmixed with negligence on his part. The very claim of Harris was suspicious; the fact that he did not have the note, or any showing from the Mitchells, made it still more suspicious, and the fact, which Hill is charged with knowing, that the Mitchell note was *credited*, shows, in our judgment, a degree of carelessness, to say the least of it, in the conduct of Hill that gives him but little claim for an interference with the regular course of law.

We are of opinion, too, that the bill is defective, in not stating by whom this proof can be made, and producing, to the satisfaction of the Court, evidence that the facts are as

stated. Even at law this is required on a motion for new trial, and it will hardly be thought that equity would interfere, by injunction, in a weaker case than is required for a new trial, at law. The amount admitted to be due ought also be offered to be brought into Court. Perhaps if this were done, Harris would be satisfied and the country be saved the expense and trouble of a new hearing. Altogether, we affirm the judgment of the Court in refusing the injunction.

Judgment affirmed.