THE CAPITAL BANK OF MACON *et al. vs.* RUTHERFORD.

1. Where facts are charged to be within the knowledge of the defendant, or where, from all the circumstances, such knowledge is necessarily presumed, and he either fails to answer altogether or makes an evasive answer, the charge will be taken as true.

2. Equity will set aside the judgment of a court having jurisdiction only where the party had a good defense, of which he was entirely ignorant, or where he was prevented from making it by fraud or accident, or the act of the adverse party, unmixed with fraud or negligence on his part. But if such causes be shown, equity will annul a conveyance obtained by fraud, or will relieve against a judgment obtained by imposition.

(a.) Suppression of a fact material to be known, and which the party is under an obligation to communicate, from the existence of confidential relations, or from the particular circumstances of the case, constitutes fraud.

3. A wife cannot bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband, and sales made by her in extinguishment of her husband's debts are absolutely void.

(a.) There is enough in this case to require an investigation before a court and jury, and the grant of an injunction was proper.

April 3, 1883.

Equity. Husband and Wife. Fraud. Judgments. Injunction. Before Judge FORT. Crawford County. At Chambers. February 23, 1883.

Reported in the decision.

BILLUPS & HARDEMAN, for plaintiffs in error.

R. D. SMITH; HARRISON & PEEPLES, for defendant.

HALL, Justice.

Was the grant of an injunction in this case, staying proceedings upon a judgment obtained by the plaintiffs in error, against the defendant in error and her husband, in an action of ejectment, in order to enable her to open the judgment and set up a defence thereto, which she alleges came to her

knowledge after the judgment was entered, and which she was prevented from discovering earlier, by no negligence on her part, but by the fraudulent conduct of the plaintiff and its confederates, an abuse of the chancellor's discretion?

The record makes this case: Upon a petition filed by complainant's trustee, he was authorized by an order of the chancellor to borrow a sum of money, not exceeding twelve hundred dollars, for the use of the trust estate, and in order to secure the loan, he was allowed to pledge or mortgage the lands belonging to the trust estate. This order was made upon a regular petition served upon all the parties in interest. The complainant consented to the arrangement, as did her minor children, by their guardian *ad litem*; the defendant in the bill made a loan and took the trustee's notes and a conveyance under the act of 1871, Code, §1969, of a part of the lands belonging to said trust estate, and at the same time complainant's conveyance to said lands, in accordance with the chancellor's order, to secure the loan. The amount of money thus loaned was not paid when it fell due, and the defendants instituted their action of ejectment against the complainant and her husband for the recovery of the land thus conveyed to it. Although personally served, it does not appear that she answered the suit, or authorized any one to do so for her; neither did her trustee respond to the suit; her husband appeared at the trial term of the case, and by an agreement with him and his counsel, a verdict was rendered by consent, with a stay of execution.

It seems that the money was paid by the defendant to the complainant's husband, who was constituted by the trustee his agent to receive and expend the same; that after the order for the loan secured by the lien was obtained, the entire negotiation was conducted by this agent, and that the trustee received no part of the money, and concerned himself not at all about the particulars of the transaction, or the disposition of the amount advanced.

The bill charges, among other things, that complainant's

husband owed the defendant, in the year 1874 or 1875, three hundred dollars, for which defendant held his individual notes; and failing to pay the same, he thereafter went into bankruptcy; that after going into bankruptcy, he applied to the defendant for another loan, which was refused, unless he would secure what he already owed it, and to that end would obtain deeds from her and her trustee to her trust lands, which her said husband agreed to do; that the defendant then advanced him the further sum of six hundred dollars, at usurious rates of interest, and they "fixed up" the notes in question, for the past indebtedness, the further loan of six hundred dollars and the usurious interests amounting to one thousand and eighty-five dollars, and her said husband, acting as the agent of defendant, by false representations, to the effect that the full amount of money was borrowed for the use of complainant and her children, induced her to consent to the making of the notes and the deeds to secure their payment; that she received none of the money borrowed, but the same was appropriated by her husband, and that all these facts were well known to the defendant; that neither her trustee nor her children were parties to the suit brought by the defendant for the recovery of the trust lands embraced in the deeds, and not being parties were not served with the writ and did not appear and answer to the same; that at the March term, 1880, of Crawford superior court, her said husband combining and confederating with his co-defendant in the bill, the said Capital Bank, allowed a verdict and judgment to be taken in its favor for said land; that this was done without her knowledge or consent; that this fact has recently come to her knowledge, and that she was not aware that there was included in the notes and deeds any usury, or the prior or any other debt of her husband during the pendency of the said action of ejectment, or before that time, or when said verdict was agreed on and judgment entered thereon, and that as soon as she discovered these things, she applied to her trustee and demanded that he

should take steps to assert her rights in the matter, and have said judgment set aside, but he refused, giving as a reason for his refusal that it might injure his credit and business relations with the defendant's bank.

Upon the presentation of this bill, the judge issued a rule calling upon the defendants, on a day named therein, to show cause why the injunction prayed for should not be granted, and ordering a stay of proceedings until the hearing. At the hearing the complainant produced and read the affidavit of Williams Rutherford, her husband, in which he deposed, among other things, that he made the arrangement himself with the Capital Bank of Macon by which they advanced certain money to him on the trust property of his wife and children; that after the terms had been agreed upon, he went to A. W. Gibson (the trustee) and complainant and induced them to sign the notes and deeds; all the money was paid to him. Before the bank would agree to advance any money, it required that the sum of two hundred and seventy-eight dollars, besides several years' interest, which he owed it individually, before he went into bankruptcy, should be embraced in the notes and deeds given by his wife and her trustee to secure the payment of the same; that he received from the bank only six hundred dollars, and the balance of the amount included in the deeds and notes was the principal and interest of the old claim that the bank held against him prior to his going into bankruptcy, and which the said bank demanded, should be included in said notes and deeds before they would advance the six hundred dollars; that all of said six hundred dollars has been paid to the bank, except fifteen dollars; that his said wife had no hand or part in, or knowledge of, the arrangement made by him with the attorneys of the bank by which a verdict and judgment in the ejectment suit was taken, nor did she know of the same until recently; neither did she, so far as he knows or believes, have any knowledge of the fact that any individual debt of his was included in said notes and deeds until very recently.

The bank in its answer admits that the verdict and judg-ment in the ejectment case were the result of an agree-ment between its counsel and Williams Rutherford and his counsel. It pointedly denies that there is any usury in the transaction, or that said Rutherford was its agent, but asserts that he was the agent of complainant and her trustee; denies responsibility for his alleged infidelity; sets forth the order of the chancellor authorizing the loan and the security for the same, together with the notes and deeds given by Gibson and Mrs. Rutherford in pursuance of the chancellor's order, and pleads that she is estopped by the deeds and notes, as well as by the verdict in the action of ejectment. All these papers they put in evidence, together with an affidavit of A. W. Gibson to the effect following: That as trustee he executed the notes and deed in pursuance of the chancellor's order; that the loan was made for the purposes set forth in his petition on which this order was made; that he believed then and believes now that the statements contained in the petition were true; that he did not in person apply the funds as the order directed. They were paid to Williams Rutherford, who acted as his agent, by whom he believes the funds were used for the benefit of the trust estate.

1. It is a significant fact that the answer of the bank, while full and direct upon almost every other point, should be entirely silent upon the very gravamen of the com-plainant's bill, viz.: that the old debt of Williams Ruth-erford was insisted upon by it as a condition of this loan to the trustee, and the studious concealment of this fact from the wife and her trustee, who might be well deluded into the belief from the petition to encumber her property—which petition was sworn to, not only by the trustee, but by the guardian *ad litem* of the minor children and by the husband—that the whole amount for which the notes and securities were given, was an advance for the benefit of the trust estate. The securities executed by the trustee and the complainant recited upon their face the pur-

pose set forth in the petition and the chancellor's order
thereon for which the loan was made. Nothing is better
settled than that where facts are charged to be within the
knowledge of a party, or where from all the circumstances
such knowledge is necessarily presumed; and he either
fails to answer altogether or makes an evasive answer;
the charge is to be taken as true. Neale *et al. vs.* Hag-
throp, 3 Bland, 551; Philips *vs.* Coons; 4 Bibb, 247; Lewis
*vs.* Stafford, *Ib.* 319.

2. Now, do the bill, answer and proofs make a case for
relief, or rather, do they sustain the chancellor's order for
an injunction?

Equity will interfere to set aside a judgment of a court
having jurisdiction; only where the party had a good
defence of which he was entirely ignorant, or where he
was prevented from making it by fraud or accident, or the
act of the adverse party, unmixed with fraud or negligence
on his part. Code, §3129.

Fraud will authorize a court of equity to annul convey-
ances, however solemnly executed, and to relieve against
awards, judgment and decrees obtained by imposition.
Code, §3178.

The judgment of a court of competent jurisdiction may
be set aside by a decree in chancery for fraud, accident or
mistake, or the acts of the adverse party unmixed with the
negligence or fault of the complainant. Code, §3595, and
the numerous cases cited under each of these sections from
the reports of this court, in the Code of 1882.

The denial that Williams Rutherford was the agent of
the Capital Bank in this transaction amounts to little, when
it is evident from the charge in the bill that there is a
misuse of the word; it was evidently used in the sense of
his being in complicity with the bank. Suppression of a
fact material to be known, and which the party is under
an obligation to communicate, constitutes fraud. The
obligation to communicate may arise from the confidential
relations of the parties, or from the particular circum-

stances of the case. Code, §3175. Any relations shall be deemed confidential arising from nature or enacted by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interests of another; or where, from similar relations of mutual confidence, the law requires the utmost good faith, such as partners, principal and agent, etc. Code, §3177.

3. Had the complainant a good defence, by which she might have defeated the recovery in the action of ejectment, in whole or in part, which she failed to set up, because she was entirely ignorant of it, or was prevented from making it by the fraud or act of her adversary? That a wife cannot bind her separate estate by any contract of suretyship, nor by any assumption of the debts. of her husband, is expressly declared by the law of this state, and all sales made in extinguishment of her husband's debts are absolutely void. Code, §1783, and cases there cited. So far does the law extend its protection of her rights, that it will not regard a sale of her separate estate to her husband as valid, unless the same is allowed by an order of the superior court of the county of her domicile. There is, then, enough in these proceedings to require an investigation of this case before a court and jury, in order that they may determine whether this complainant had a good defence to the action of ejectment; how much of her husband's debt entered into these notes and conveyances; how much is still due of the 600 dollars advanced under the order of the chancellor, and whether she was prevented from setting up this defence by any of the causes above enumerated; and how far she was negligent, if she was so at all, in failing to insist at the proper time upon her rights. From this it follows that we are of opinion that the order directing the injunction to issue was proper.

Judgment affirmed.