## REDWINE v. McAFEE.

1. A court of equity will not grant relief against a judgment obtained at law, when the petition for such relief is founded solely upon causes which might, by the exercise, of ordinary diligence have easily been ascertained and set up as a defense to the action in which such judgment was rendered.

2. This case, upon its facts, falls within the principle above stated, and consequently the judge erred in granting the injunction.

SIMMONS, C. J., and LITTLE, J., concur in the first headnote, but dissent from the conclusion in the second.

Argued June 11, — Decided July 9, 1897.

Injunction. Before Judge Lumpkin. Fulton county. May 26, 1897.

*Arnold & Arnold,* for plaintiff in error.

*Peter F. Smith,* contra.

ATKINSON, J. Harris executed a promissory note which was made payable to the order of McAfee at the office of Redwine, the plaintiff in error. This note McAfee endorsed, waiving notice, demand, protest, and notice of protest, and with the further stipulation that he would remain bound on the note until paid in full as if the same was duly protested. He then delivered this note to Harris, who in turn negotiated it to Redwine. To the name of Harris as it was signed to the note was affixed the word "agent." Redwine brought suit upon this note against McAfee, the endorser, and caused him to be served personally. McAfee appeared and pleaded that he was not indebted, and further that his endorsement was made only as a surety, and not for value. Upon the trial of the case it resulted in a verdict in favor of the plaintiff, Redwine. He caused an execution which issued on the judgment rendered in his favor to be levied upon certain property of the defendant McAfee; and thereupon the latter filed a petition for injunction, in which he alleged, in substance, that the note was negotiated to Redwine by Harris as agent of Mrs. Harris, the wife of the maker, with which to carry on business for her, and of which fact Redwine, the plaintiff, was well aware; that the note had been paid to him long before he brought the suit on it, but of this neither McAfee nor his counsel knew

until after judgment, and could not have known, they having exercised all possible diligence in making defense, etc. Redwine demurred to the petition, for the want of a cause of action; and filed an answer denying the material allegations.

At the hearing, the following appeared for the plaintiff: Harris, being so authorized, made the note as agent for his wife and delivered it to McAfee, who had no interest therein, but endorsed it and returned it to Harris to enable him to borrow money for his wife. Harris then negotiated it to Redwine, who fully understood that Harris was acting for his wife, and knew that the object was to borrow money for her in carrying on a line of business; and the money was used in that business. Redwine then had in his possession a power of attorney from Mrs. Harris, authorizing Harris to act as agent in that business, and traded for the note with full knowledge of all the facts. Harris and wife lived upon property which was owned by her, and she was indebted to Redwine on this and other claims. He frequently demanded a settlement of all matters against her. Being so pressed by him, she procured Collins to build her a house at another place, and agreed with him to exchange her former for the latter residence, he further agreeing to assume a mortgage on the former, and to pay off all debts due by her to Redwine, of every character and description whatever, whether they were a lien on her property or not. This exchange and agreement were carried out. Subsequently Collins talked with Redwine with reference to the amount due by Mrs. Harris, and was informed that it was between $1,300 and $1,500. Redwine agreed to accept $800 in full settlement of all claims held by him against Mrs. Harris, whether liens on the property or not; and this was paid to him in 1893, and Collins took from Redwine a receipt in full. Harris considered that Collins paid off all claims, including the note now in question. At the time he filed his plea to the suit on the note, and until after judgment was rendered, McAfee did not know that the note had not been paid. He was simply an endorser thereon, and did not receive any consideration. He exercised the utmost diligence in procuring all the evidence possible in order to defend the suit. His

counsel availed himself of all the information at his command, and made diligent inquiry of McAfee as to the grounds of defense.

The evidence for the defendant was, in brief, as follows: He discounted the note in good faith, believing the money was due McAfee by Harris as agent. He believes that at the date of the note Harris was agent for Ladd. He does not believe and never believed that Mrs. Harris owed the debt or any part of it. He sued Mrs. Harris, in 1893, on certain notes she owed him, and afterwards, on October 3, 1893, Collins settled said notes and certain tax executions against Mrs. Harris. He paid some cash and gave notes for the balance, so as to settle said executions and demands at about fifty cents on the dollar. He may have required some general receipt; but such receipt, if given, was intended to apply only to the item of interest notes of Mrs. Harris to Williams and paid by Redwine, and did not apply to anything else except certain tax executions paid by and transferred to Redwine. Collins has never attempted to settle Mrs. Harris's debts. Redwine held and holds now about $4,000 of indebtedness against Harris individually and as agent. He does not and never did regard the McAfee note as a debt of Mrs. Harris's, and never settled said debt with Collins on a nominal sum paid him. The facts connected with the settlement with Collins were well known to Harris and wife on October 3, 1893, and McAfee or his attorney by inquiry could have learned them so as to use them in defense of his suit on the note. McAfee knew Harris well, and knew where to find him, or his attorney could easily have found him by inquiry. He has lived here 28 years, and is well known. Harris testified that the settlement made by Redwine with Collins was completed about August 4, 1893, and before September 20, 1893.

The trial judge upon the hearing granted the injunction, upon condition that the complainant McAfee give a bond in a sum named, which was sufficient for the purpose, conditioned to pay the amount that may be found to be due by him to the plaintiff Redwine. To the grant of this injunction Redwine excepted.

The proposition announced in the first headnote which precedes this opinion is a mere restatement of the principle declared in section 3988 of the Civil Code, as follows: "Equity will interfere to set aside a judgment of a court having jurisdiction, only where the party had a good defense of which he was entirely ignorant, or where he was prevented from making it by fraud or accident, or the act of the adverse party, unmixed with fraud or negligence on his part"; and it will be conceded that the rule is correctly stated. The only point of difference is whether, under the evidence, the court was justified in granting the injunction.

Courts of equity grant relief only in favor of the diligent; and this court has uniformly held that equity does not relieve from a judgment which could have been prevented but for the negligence of the complaining party. *Rogers* v. *Kingsbury*, 22 *Ga.* 60; *Vaughn* v. *Fuller*, 23 *Ga.* 366. Negligence of a party precludes the interference of equity against the judgment. *York* v. *Clopton*, 32 *Ga.* 362; *Hill* v. *Harris*, 42 *Ga.* 412. Before a court of equity will interfere with a judgment of a court of common law, it must appear, not only that the complaining party was ignorant of the existence of a defense which he might have made to the common-law suit, but that such ignorance did not result from his own negligence, and that he is without an adequate remedy at law. *Taylor* v. *Sutton*, 15 *Ga.* 103. A court of equity is loath to open a judgment in order to enable a complaining party to make a defense which could have been made at law, and will not open such a judgment where the defendant has been negligent. *Smith* v. *Phinizy*, 71 *Ga.* 641. A court of equity will not grant relief from a judgment that could have been prevented by diligence. *Smith* v. *Hornsby*, 70 *Ga.* 552.

Applying the facts of the present case to the principles of law above announced, it is shown that the complainant who seeks equitable relief was regularly sued and personally served; that in response to the process of the court in which the judgment was rendered he appeared and pleaded. He suffered judgment to go against him upon his pleas, without suggesting in any manner to the court the existence of the

defense of which he now seeks to avail himself. He alleges in general terms the conclusion of fact that he and his counsel were in all respects diligent; but the facts presented show that he was grossly negligent. The defense of which he now seeks to avail himself is, that the note upon which he was sued as endorser for accommodation had been in fact paid by the maker prior to the institution of the action against him. The maker of the note, who claimed to be the agent of his wife, and his wife, the alleged principal, were both residents within the county in which the suit was pending at the time it was tried; and this fact was known to the complainant. The suit was pending upon the docket between the date of filing the pleas and the rendition of the judgment for nearly, if not quite, a year; and yet, during this entire time, there is no evidence that either the complainant or his attorney at any time inquired of the maker as to whether or not the note sued upon had in fact been paid. There is no suggestion in the record as to why such an inquiry was not made. There is abundant evidence from the maker of the note that, if inquiry had been made, he would have stated to the complainant the true condition of affairs. The most natural thought that would have suggested itself to the most careless and indifferent of persons, when sued as an accommodation endorser of a promissory note, would have been to inquire of the maker why he had not paid the note and relieved the accommodation endorser of responsibility; and yet, with this evidence easily within his reach, the complainant quietly sat by and suffered judgment to go against him. If under such circumstances courts of equity are to set aside judgments solemnly rendered in courts of law, then the judgments of the latter courts can not be said ever to conclude parties as to matters and things involved in the litigation which results in such judgments. This may be an unconscionable judgment, but if so, its rendition has been made possible only in consequence of the gross negligence of the party who now complains; and in order to grant to him relief under the circumstances, it would be necessary to disregard the plainest and most obvious of all of the maxims of the law, "*Vigilantibus non dormientibus jura subveniunt.*"

It follows, therefore, that the circuit judge erred, as matter of law, in granting the injunction prayed for.

*Judgment reversed. Simmons, C. J., and Little, J., dissenting; the other Justices concurring.*