## BAILEY *v.* DEVINE *et al.*

1. A note executed and made payable in another State by a citizen of Georgia is governed, as to its validity, force, and effect, by the lex loci; and, in the absence of proof as to the law of that State, the common law is presumed to be of force.
2. In order for duress of imprisonment, either actual or threatened, to have been available at common law as a defense to a contract, the imprisonment must have been unlawful.
3. An imprisonment may be originally lawful, and become unlawful. If one is in jail under a charge of murder, and another threaten to detain him in prison for an indefinite period and prevent a trial from taking place, this would amount to a threat of unlawful imprisonment.
4. A parent may avoid a contract given under duress of imprisonment of a child.
5. Where an attorney at law has been employed by a parent to defend his son, who is in prison charged with murder, and the fee for such service has been agreed upon, a promise to pay to such attorney for another attorney an additional sum due him by witnesses against the son, for securing their release from jail, is without consideration.

Argued June 29, —Decided August 3, 1905.

Complaint. Before Judge Hodges. City court of Macon. October 1, 1904.

Thomas H. Devine brought suit against Mrs. S. A. Bailey and W. H. Bailey, on a promissory note. The note was for $500, was executed by the defendants in Pueblo, Colorado, and made payable to Devine & McAliney at the First National Bank of that place. The defendant Mrs. Bailey filed an answer, setting up the following facts: The note was obtained from her by Devine by threats, fraud, and duress. Defendant's son, W. H. Bailey, had killed a man in Pueblo, Colorado, and telegraphed for his mother, who resided in Macon, Georgia, to come to him. On arriving in Colorado, she found her son incarcerated in jail, charged with murder. He had spoken to the plaintiff Devine, an attorney at law, with a view to employing Devine to defend him. Mrs. Bailey found Devine in charge of her son's case, but Devine " declined to allow said case to proceed to trial until he should be paid a fee." Mrs. Bailey agreed with the attorney on a fee of one thousand dollars, telegraphed to Macon for that sum, and had it sent to her. After this had been done, Devine informed her that five men had been incarcerated in jail and held by the State of Colorado as witnesses against her son; that these five men had employed one McAliney to represent them, and had agreed to pay him $500 for his services; that the State had released the five witnesses from jail; and they had declined to pay McAliney the $500. The case of the defendant's son was set for trial on the day this conversation took place, and Devine demanded of the defendant that she pay McAliney the fee of $500 before the case could proceed; plaintiff stating that unless this sum was paid, or a note therefor given, he would postpone the case and keep defendant's son in jail indefinitely. Defendant, being many miles from home, without friends, and absolutely in the power of Devine, and acting under and being coerced by the threat of Devine, gave the note sued on. She never agreed to pay but a thousand dollars as a fee for representing her son. Defendant had nothing to do with McAliney and had not employed him, and gave the note because she was made to believe that unless she did so her son would remain in jail for an indefinite period. Defendant also pleaded that the note was without consideration, as shown by the facts above detailed. The court struck the defendant's plea, and

entered up judgment against both of the defendants on the note. Mrs. Bailey excepted.

*Davis & Miller* and *J. C. Morcock*, for plaintiff in error. *Hardeman & Jones*, contra.

COBB, J.  1. The note having been executed in Colorado, and being made payable there, its validity, force, and effect are dependent upon the law of that State; and no law of that State being pleaded, it will be presumed that the common law is in force with reference to the defenses set up in the defendant's answer. *Mass. Life Asso.* v. *Robinson*, 104 *Ga.* 286; *Hollis* v. *Loan Asso.*, 104 *Ga.* 318; *Kollock* v. *Webb*, 113 *Ga.* 768; *Akers* v. *Jefferson Bank*, 120 *Ga.* 1066.

2–4. At common law there were three kinds of duress,—duress of imprisonment; duress per minas, resulting from fear of loss of life, limb, mayhem, or of imprisonment; and duress of goods. 10 Am. & Eng. Enc. Law (2d ed.), 321–322; 9 Cyc. 444–445. Duress of imprisonment was available as a defense to a contract, if the imprisonment, or threatened imprisonment, was unlawful. See Clark on Contracts (2d ed.), 242 et seq.; Hammon on Cont. §§ 134–135, p. 190 et seq.  An imprisonment which was originally lawful might, by a subsequent abuse of it, become unlawful and constitute duress.  1 Story on Cont. (5th ed.) § 512.  An unlawful imprisonment, or threat of unlawful imprisonment, of one's child constituted duress.  Clark on Cont. (2d ed.), 245; 10 Am & Eng. Enc. Law (2d ed.) 330; *Southern Express Co.* v. *Tyson*, 48 *Ga.* 358, 361. The provisions of our code with reference to duress are broader than the common law.  The Civil Code, § 3536, provides:  "Duress consists in any illegal imprisonment, or legal imprisonment used for an illegal purpose, or threats of bodily or other harm, or other means amounting to or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will."  Section 3670 declares:  "The free assent of the parties being essential to a valid contract, duress, either of imprisonment, or by threats, or other arts, by which the free will of the party is restrained, and his consent induced, will void the contract.  Legal imprisonment, if not used for illegal purposes, is not duress."  It is probable that the provisions of the sections quoted, so far as they relate to duress of imprisonment,

are no broader than the common law; and it may be that an imprisonment for an illegal purpose would be an unlawful imprisonment within the meaning of the common law.    See, in this connection, *Southern Express Co.* v. *Tyson*, 48 *Ga.* 358, 361; *Hunt* v. *Hunt*, 94 *Ga.* 257; *Graham* v. *Marks*, 98 *Ga.* 67.

Bailey was lawfully in jail in Colorado under a charge of murder, but it was not lawful to keep him in jail indefinitely without a trial.    His detention for any other purpose than a trial at the time and in the manner provided by law would be unlawful. The threat of Devine was to bring about an abuse of the lawful imprisonment of Bailey, in order to cause his mother to give the note sued on.    Such an act would, even under the strict common-law rule, constitute duress.    We can well understand how a woman, ignorant of the law, a thousand miles away from home, relying upon the supposed knowledge of the law and integrity of the plaintiff as an attorney at law, might have thought that he was able to carry his threat into execution, and might therefore have been coerced into a promise to pay the sum sued for, to release her son from the threatened detention in jail without trial. Comment upon the grossly reprehensible conduct of the plaintiff, as shown by the answer, is unnecessary, and would perhaps not be proper, as he has not been heard; but we are clear that the plea of duress was good, and that the court erred in striking it.

5. We are also unable to discover, from the facts pleaded, any valid consideration for the note.    The fee of the attorney had been agreed on, and had either been paid to him or was about to be paid.    The consideration, therefore, for the note could not have been the performance of services in defense of the defendant's son.    Where, then, was the consideration?    The witnesses for the State had been released from jail.    The plaintiff and McAliney did not undertake to get the witnesses out of the way; and if they had, the contract would have been void as against public policy.    *Rhodes* v. *Neal*, 64 *Ga.* 704.    There was no benefit accruing to the defendant by the payment of the fee due by these witnesses to McAliney.    She was wholly a stranger to the contract with him for fees.    It can not be said that the promise to bring on the son's trial was the consideration, because the plaintiff had already been paid to represent the son, and certainly his employment comprehended the use

of such efforts and agencies as he could properly use to bring about the son's speedy trial and release from custody. Besides, a promise to release from an unlawful imprisonment which the promisor himself made unlawful would not afford any valid consideration for a contract to pay for such a service. In any view of the facts set up in the defendant's answer, the plea of no consideration should not have been stricken.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*