## BRANAN et al. v. FELDMAN et al.

1. The bond made and filed by the defendant in the bail-trover action was not the bond required of him under section 5151 of the Civil Code of 1910; and the officer serving the petition and process in such action properly declined to accept such bond and discharge the defendant from custody. Where, upon making and filing such bond, the defendant applied to the judge of the superior court for his discharge from arrest, upon the ground that he was unable to give the security required by law, or to produce the property, upon which application the judge passed an order requiring the plaintiff in the trover suit to show cause at a designated time why the prayer of the applicant should not be granted, further providing in the order that the applicant might be placed in the custody of an officer deputized by the sheriff, to be safely kept by him and brought before the judge at the time and place designated in the

order; and where at such time the judge passed an order, to which the attorney for the plaintiff in the trover action expressly agreed in writing, continuing the hearing to a later date and providing that the defendant in the trover suit might go upon his own recognizance, which the defendant did; and where subsequently, upon the appearance of the parties and attorneys before the court, pursuant to the last mentioned order, the attorney for the plaintiff in the trover action announced to the judge and the attorney for the defendant that he did not want the defendant held under arrest, and that he might be released from custody and go upon his own recognizance, the court, after the rendition of a verdict in the trover suit in favor of the plaintiff, was without authority to enter judgment against the sureties upon said bond, and such judgment was void.

2. The petition alleged facts sufficient to show that such judgment was procured by fraud and collusion; and such was void and not conclusive upon the sureties. This ruling is not in conflict with the decisions of this court to the effect that sureties on eventual condemnation-money bonds in actions of trover are bound by judgments against their principals, and will not be heard to impeach them.

3. A court of equity has jurisdiction to vacate a judgment obtained by fraud or collusion.

4. The petition in this case set forth a cause of action, and the court erred in dismissing it upon general demurrer.

No. 3897. May 28, 1924. Rehearing denied June 19, 1924.

Equitable petition. Before Judge E. D. Thomas. Fulton superior court. July 9, 1923.

Charles I. Branan and J. B. Coppedge filed their equitable petition against Morris Feldman, Hamilton Douglas Jr., Helen Douglas, and Davis & Freeman Inc.; and made this case: On January 21, 1919, Davis & Freeman Inc. instituted in Fulton superior court a bail-trover suit against Z. T. Coppedge. Hamilton Douglas Jr. and Morris Feldman were the attorneys at law who represented the plaintiff in said action. On January 29, 1919, Z. T. Coppedge, with petitioners as sureties, executed his bond, payable to plaintiff, in the form of the usual eventual condemnation-money bond in such action, but with this provision therein: "This bond made to secure this obligation until 3:00 p. m. on January 30th, 1919; if property described produced by said time, this bond to be void, otherwise of effect." On January 30, 1919, Z. T. Coppedge filed his petition for discharge, denying that he ever had been in possession of the property so described, and seeking his discharge on the ground that he was unable to give the security required by law, or to produce the property. On the same day the judge to whom this petition was presented passed an order requiring the plaintiff in the

trover action to show cause before him, on February 4, 1919, why the prayers of the petition should not be granted; and directing that "in the meantime, and until the further order of said court, said petitioner, Z. T. Coppedge, may be placed in the custody of some officer deputized by the sheriff of said county, to be safely kept by him and brought before me at the time and place set forth in this order." On the date set for the hearing the judge passed a consent order continuing the hearing until February 15, and providing that "in the meantime petitioner, Z. T. Coppedge, may go on his own recognizance." This order was consented to in writing by the attorneys for both parties in the trover suit. On February 15, 1919, the parties and their attorneys appeared before the court, and while waiting for a hearing the attorney for the plaintiff in the trover suit announced, in the presence of the judge and to the attorney for Z. T. Coppedge, that he as such attorney did not want said Coppedge held under arrest any longer, and then and there agreed that Coppedge might be released from arrest and go upon his own recognizance. Thereupon the parties and attorneys in the trover suit left the court-room with the understanding and agreement that Coppedge was released upon his own recognizance, and that the bond in this action heretofore referred to, and signed by plaintiffs as sureties, was by agreement of counsel and the approval of the court made null, void and of no effect.

On October 1, 1920, Z. T. Coppedge died. On April 7, 1921, the sister of the attorney for the plaintiff in the trover suit duly qualified as administratrix of the estate of said Coppedge, and was made a party defendant in said suit. On March 29, 1923, the trover suit was tried. The administratrix appeared, and also counsel for plaintiff. Horace Russell, an attorney at law, appeared at the trial and stated to the court and to the administratrix that he represented one of the heirs of Coppedge, and desired to co-operate with the administratrix in defense of the suit, and that there was an absolutely good and valid defense to the trover suit. The administratrix refused to allow Russell to assist or in any manner participate in the trial of said case, and informed him that she did not want any assistance in the trial. The case then proceeded to trial. No jury was stricken, but the jury in the box was taken. Counsel for plaintiff introduced certain depositions and documentary evidence, some of which were illegal and incompetent, but to

none of which the administratrix objected. The witness for plaintiff was incompetent, and upon proper objection would not have been allowed to testify in said cause. After a proper defense had been made to said suit, judgment would not have been rendered against the estate of Coppedge; and said unjust and illegal verdict and judgment was the direct result of collusion and conspiracy between the plaintiff and the defendant to procure the same through their joint efforts and co-operation, the administratrix acting throughout the entire matter solely in the interest of her brother and the plaintiff in said trover suit, rather than the interest of the estate she represented. Said conduct of the defendant constituted a fraud upon petitioners, which resulted in the illegal verdict and judgment.

Coppedge had applied to Charles I. Branan, to prevent his immediate imprisonment. Branan expressly declined to sign the usual forthcoming bond as provided by law in such cases, but agreed to sign an appearance bond for defendant, to be good until the next day, and to that end communicated with Hon. George L. Bell, judge of said court, and requested the right to give such a bond to prevent the defendant from being imprisoned over night. Said judge, as petitioners understood, granted said application, and directed the sheriff to assess such a bond. The attorney of record of said defendant thereupon hurriedly prepared the bond which was signed by petitioners, dated and filed January 29, 1919. In the hurried drafting and signing of said bond the same was contrary to the directions and intentions and understanding of petitioners and contrary to the purpose and intention of said attorney, and through accident and mistake was written in such form and language as left therein the conflicting provisions above; whereas all of the parties intended and believed that said bond was simply an appearance bond, good only until 3:00 p. m. January 30, 1919. Pursuant to the directions of the judge and pursuant to the terms of said bond, as understood and intended by the parties at interest, the defendant in the trover action and his counsel appeared before Judge Bell at or about 3:00 p. m. January 30, 1919, at which time the defendant Coppedge was by order of the court placed under arrest as provided by law in bail-trover cases, and thereupon and thereby said bond was in law canceled and made null, void, and of no further effect. Coppedge was held under arrest until February

4, 1919, and was on that date brought into court under arrest for a hearing on said petition for discharge, at which time counsel for plaintiff in the trover case agreed in open court that Coppedge might be released from arrest and could go on his own recognizance without bond. The consent order of February 4, 1919, was signed in accordance with the above agreement in open court; and acting upon the same and the subsequent agreement of February 15, 1919, no actual trial was had upon the defendant's application for discharge without bond. Petitioners charge that the defendants herein are now estopped to deny said agreement in open court and said order, in that the court, Coppedge, and petitioners acted and relied upon the same as an agreement and order made in good faith.

Petitioners charge that said bond was written and signed in its present form and language as a result of accident and mistake, and was intended to read and should, if necessary to fully protect the rights of the petitioners herein, now be reformed by said court so as to read that it was made to secure the obligation thereof until 3:00 p. m. on January 30, 1919, and if the defendant were produced at said time the bond was to be void; that said bond was canceled and rendered null by said agreement in open court and by said orders of January 30 and February 4, 1919; that the defendants herein are by their said conduct on said dates estopped in law and equity and good conscience from denying that said bond was canceled and made null by said agreement in open court and order, and should be restrained and enjoined from levying or otherwise proceeding against petitioners under and by virtue of said verdict or judgment, and that said verdict and judgment should be set aside and declared null and void. Petitioners prayed that said verdict be set aside; that said bond be canceled; and that such further order, judgment, or decree be rendered as might be necessary or proper to establish and protect the legal and equitable rights of petitioners.

To this petition the defendants demurred on the grounds: (1) that no equitable cause of action is set out therein; (2) that no legal cause of action is set out therein; (3) that the allegations of the petition amount only to a collateral attack upon a valid judgment entered by a court of competent jurisdiction; (4) that it is an effort to go behind and set up matter antecedent to a judgment of a court of competent jurisdiction; (5) that if plaintiffs had the right to prevent judgment being rendered against them, they could

have done so by proper pleadings and intervention before the trial; (6) that the petition was subject to various special grounds of demurrer. The court sustained the general grounds thereof and dismissed the petition; and the petitioners excepted.

*Dorsey, Shelton & Dorsey* and *Ralph H. Pharr,* for plaintiffs.

*W. C. Henson* and *Douglas & Douglas,* for defendants.

HINES, J. (After stating the foregoing facts.)

1. When an action of bail-trover is instituted against a defendant, it is the duty of the sheriff or other lawful officer serving the petition or process in such action "to take a recognizance payable to the plaintiff or complainant, with good security, in double the amount sworn to, for the forthcoming of such personal property to answer such judgment, execution, or decree as may be rendered or issued in the case, and such security shall be bound for the payment of the eventual condemnation-money." Civil Code (1910), § 5151. The bond made and filed by the defendant in the bail-trover suit, with the petitioners as sureties, was not the statutory bond prescribed by this section of the Code; and the officer who served the petition and process acted properly in declining to accept such bond and discharge the defendant from custody. Thereupon the defendant filed his application for discharge from arrest, on the ground that he was unable to give the security required by law, or to produce the property. The judge to whom the petition for discharge was presented passed an order requiring the plaintiff in the trover action to show cause before him, on February 4, 1919, why the prayers of the petition should not be granted; and in this order directed that the "petitioner, Z. T. Coppedge, may be placed in the custody of some officer deputized by the sheriff of said county, to be safely kept by him and brought before me at the time and place set forth in this order." On the date set for said hearing in the last-mentioned order, the judge passed a consent order, continuing the hearing until February 15th, and providing that "in the meantime petitioner, Z. T. Coppedge, may go on his own recognizance." This order was consented to in writing by the attorneys for the plaintiff in the bail-trover proceeding. Thus the defendant in that action was discharged from the custody of the arresting officer, not by virtue of the bond, but by said order which was passed with the express written consent of the attorneys of the plaintiff. He was permitted to go on his own recognizance, with plaintiff's approval.

This being so, the bond made and filed by the defendant in that action was not accepted by the arresting officer or by the plaintiff therein; but it was held and treated as if no bond had been given as required by the statute. The defendant was not discharged from custody by reason of this bond. He gained his liberty by being permitted to go on his own recognizance with the consent of the plaintiff. This being so, the bond made and filed by the defendant in the trover suit, and not accepted, and on which the defendant was not released, was not such a bond as authorized the trial judge to enter judgment thereon against the sureties on the recovery of a verdict by the plaintiff in the bail-trover action. This principle, in effect, was ruled by this court in *Parks* v. *Hardwick,* 158 *Ga.* 71 (122 S. E. 553). The rules in cases of bail in criminal cases generally apply to bail in civil cases. *Griffin* v. *Moore,* 2 *Ga.* 331. So we think under the decision in *Parks* v. *Hardwick,* supra, the court was without authority, under the facts of this case, to render judgment against the sureties upon the bond made and filed by the defendant in the trover action.

2. The petition alleges that the verdict and judgment in the bail-trover proceeding was procured as the result of fraud and collusion between the plaintiff and the administratrix of the deceased defendant in that action. Collusion between parties to the bail-trover suit to have judgment entered up for the purpose of defrauding the bail renders such judgment void. As against the bail such judgment is void. Parkhurst *v.* Sumner, 23 Vt. 538 (56 Am. D. 94); Mott *v.* Hazen, 27 Vt. 208, 213; Charles *v.* Hoskins, 14 Iowa, 471 (83 Am. D. 378); Berger *v.* Williams, 4 McLean, 577; Thayer *v.* Clark, 4 Abb. App. 391; Dane *v.* Gilmore, 51 Me. 544; State *v.* Woodside, 29 N. C. 296; Great Falls Mfg. Co. *v.* Worster, 45 N. H. 110; *Smith* v. *Cuyler,* 78 *Ga.* 654 (2) (3 S. E. 406); 15 R. C. L. 706, 707, § 158; Id. 841, § 314. This holding does not conflict with the rulings in *Jackson* v. *Guilmartin,* 61 *Ga.* 544, *Crawford* v. *Jones,* 65 *Ga.* 523 (2), *Thomas* v. *Price,* 88 *Ga.* 533 (2) (15 S. E. 11), *Hogans* v. *Dixon,* 105 *Ga.* 171 (31 S. E. 422), *Holmes* v. *Langston,* 110 *Ga.* 861, 869 (36 S. E. 251), and *Waldrop* v. *Wolff,* 114 *Ga.* 610 (40 S. E. 830), that sureties on eventual condemnation-money bonds in actions of trover are bound by the judgments against their principals, and will not be heard to raise any questions which could have been raised by their principals before

judgment. That principle applies to real contests, and not to sham battles.

3. The jurisdiction of courts of equity to vacate judgments obtained by fraud or collusion is too well recognized to require discussion. *Langston* v. *Roby,* 68 *Ga.* 406; *Williams* v. *Lancaster,* 113 *Ga.* 1020 (39 S. E. 471); *Ford* v. *Clark,* 129 *Ga.* 292 (58 S. E. 818); *Giles* v. *Cook,* 146 *Ga.* 436 (2) (91 S. E. 411).

4. Applying the above principles, the petition set forth a cause of action; and the court erred in dismissing it on general demurrer.

*Judgment reversed. All the Justices concur, except Atkinson and Hill, JJ., disqualified.*