## YOUNG *v.* YOUNG.

No. 12615. APRIL 12, 1939.

*Robert S. Sams* and *Ray Williams,* for plaintiff in error.

*Augustus M. Roan* and *Houston White,* contra.

REID, Chief Justice. Mrs. Mary Elizabeth Young filed suit

against Charles W. Young for divorce a vinculo matrimonii. On March 6, 1936, after the rendition of successive verdicts as required by law, a decree was entered in her favor. A judgment based upon an agreement between the parties, for permanent alimony for the support of Mrs. Young and the minor child of the marriage, was also rendered by the court. On February 18, 1938, Mr. Young filed an equitable petition praying that these verdicts and judgments be set aside; that he be granted the custody of the child during certain parts of the year; that reasonable alimony be granted only for the support of the child while in Mrs. Young's custody; and that he be allowed to plead in said case by filing an answer, which he attached to the petition. This proposed answer denied the material allegations of the petition for divorce, charged numerous acts of cruelty on the part of Mrs. Young, and prayed that a total divorce be denied her and judgment for total divorce be entered in Mr. Young's favor. He alleged absence of Mrs. Young from the State since the rendition of the decree and until the filing of the present action. Mrs. Young attacked this petition by way of a general demurrer, and to a judgment overruling the demurrer she excepted.

The petition of Mr. Young charges in substance: (1) that the ground upon which the divorce was sought and granted, and the essential allegation contained in the petition therefor, viz., that at the time of its institution the parties were living in a bona fide state of separation, were false and unfounded; that in fact the petitioner had been guilty of no cruel treatment of Mrs. Young, but on the other hand she had been guilty of many acts of cruelty towards him; that as a matter of actual fact they lived together as man and wife under the same roof up to a few weeks before the rendition of the final verdict and the entry of the decree thereon; (2) that at Mrs. Young's request he agreed not to appear in court and contest the divorce, which he charges constituted a fraud on the court; (3) that this agreement and his conduct in failing to appear and defend the suit were the result of certain acts of fraud and duress, which will be more fully set out hereinafter; and (4) that Mrs. Young, before and during the pendency of the suit for divorce, had been guilty of acts of adultery with a named person, which it is alleged constituted a good defense to her action for divorce based on cruel treatment, and of which he was entirely

ignorant. For each and all of the above reasons, it is urged that the verdicts and judgments should be vacated.

■ It is important to note that the allegations that the petitioner had not been guilty of any cruel treatment of Mrs. Young, and that the parties continued to live together as man and wife until shortly before the final verdict and the entry of judgment thereon, would have constituted good defenses to Mrs. Young's action for divorce; for they controvert two of the essential and material allegations made by her in her petition. There is no question that Mr. Young was served with the petition and process, and otherwise had knowledge of the allegations of the petition; and of course the fact that said allegations were false was peculiarly within his knowledge. Since it is provided in the Code, § 30-113, that "No verdict or judgment by default shall be taken in a suit for divorce, but the allegations in the petition shall be established by evidence before both juries," the complaint is essentially that the verdicts and judgments are based on perjury. Fraud which will permit of the setting aside of a former judgment between the same parties is "limited to matters which are extrinsic and collateral to the issue tried in the former case, and do not include fraud in procuring a judgment by false testimony" (*Elliott* v. *Marshall,* 182 *Ga.* 513, 185 S. E. 831; *Walker* v. *Hall,* 176 *Ga.* 12, 166 S. E. 757; *Thomason* v. *Thompson,* 129 *Ga.* 440, 59 S. E. 236, 26 L. R. A. (N. S.) 536), except and "unless the person charged with such perjury shall have been thereof duly convicted, and unless it shall appear to the said court that the said verdict, judgment . . could not have been obtained and entered up without the evidence of such perjured person." Code, § 110-706. The legislature is wise in so requiring; for otherwise there would be retrial after retrial of many cases, with no end to litigation, and a judgment would be stripped of its prime attribute, that is, its finality.

It is argued that since Mrs. Young had no valid ground for divorce, and since she was enabled to obtain the same upon such false testimony because of the agreement and conduct of the husband in not defending the action, this constituted a fraud and imposition on the court, and that in such case the above rule does not apply. It is pointed out that a marriage contract is essentially different from an ordinary civil contract; that it is one affected with a public interest; that the legislature has regulated

the grounds upon which it may be dissolved; and that to allow the parties to a marriage to so collude between themselves and obtain. a divorce on false testimony is but to put it in their power to dissolve the contract at will and without just cause, which the court will not permit on being informed of the deception practiced upon it. The full pressure of the argument is felt, but we can not agree to its soundness. It seems to be the general rule in other jurisdictions that presenting fabricated evidence or perjured testimony upon a trial where the falsity might or should have been exposed and refuted is not such a fraud in obtaining a judgment of divorce as will warrant its nullification. See authorities cited in L. R. A. 1917B, 429. Our Code is very clear that a judgment procured upon false testimony can not be set aside until the perjured witness has been convicted thereof. The legislature has made no exception in reference to judgments of divorce; and this should constitute sufficient answer to the argument presented. By making it necessary that the allegations of the petition be made out by sufficient evidence, it would seem that it was the intent of the lawmaking body to bring the judgment of divorce within the operation of this rule. A judgment of divorce, in our opinion, should have the same attribute of finality as other judgments, and the interest of the State in the marriage relation is not sufficient to justify the court, at the instance of a spouse against whom a judgment of divorce has been rendered, and who has had his or her day in court, to set the same aside on the ground that it was based on the perjured testimony of the other spouse, unless such other spouse has been convicted of the perjury; and it can make no material difference, in this connection, whether the defendant appeared at the trial and contested the truth of the allegations contained in the petition for divorce, and the other spouse successfully obtained the judgment upon such perjured testimony, or whether the defendant, being agreeable to the divorce, agreed that he would not expose the falsity of the allegations and the testimony introduced in support thereof. In such a case consideration is to be given, not alone to the interest of the parties to the record and their children, but to society as a whole; and but for the sanctity of judgments its safe structure would be all the more difficult to preserve. The. wisest course, and that beset with less evils, is conclusively to presume the correctness of the judgment of divorce, until and unless it is im-

peached in the manner prescribed in the above section. Matters of collusion, consent, or condonation should be set up before final verdict. Code, § 30-109. Those cases dealing with the right of a court of equity to set aside a judgment of the court of ordinary appointing or discharging an administrator because of fraud intrinsic in the judgment, that is, as to matters passed on in the rendition of the judgment of appointment or discharge, and those cases authorizing annulment of judgments where a court was deceived into taking jurisdiction of a cause when in fact it had none, must be considered as based on special considerations and as constituting exceptions to the rule, and are not by analogy authority contrary to the ruling here made. Examples of the first are: *Mobley* v. *Mobley,* 9 *Ga.* 247; *White* v. *Roper,* 176 *Ga.* 180 (167 S. E. 177); *Pass* v. *Pass,* 98 *Ga.* 791 (25 S. E. 752); *Pollock* v. *Cox,* 108 *Ga.* 430 (34 S. E. 213); *Morris* v. *Johnstone,* 172 *Ga.* 598 (158 S. E. 308); *Loyless* v. *Rhodes,* 9 *Ga.* 547; *Wallace* v. *Wallace,* 142 *Ga.* 408 (83 S. E. 113); *Wash* v. *Wash,* 145 *Ga.* 405 (89 S. E. 364); *Seagraves* v. *Powell Co.,* 143 *Ga.* 572 (85 S. E. 760). Of the second: *Power* v. *Green,* 139 *Ga.* 64 (76 S. E. 567); *Portman* v. *Mobley,* 158 *Ga.* 269 (123 S. E. 695); *Davis* v. *Albritton,* 127 *Ga.* 517 (56 S. E. 514, 8 L. R. A. (N. S.) 820, 119 Am. St. R. 352); *Hamilton* v. *Bell,* 161 *Ga.* 739 (132 S. E. 83). Whether a defendant in an action for divorce, who instigates, and procures the other spouse to obtain the divorce on false testimony, might, even where the other spouse has been convicted of the perjury, have the same set aside in a court of equity at his or her instance, is a question which need not be passed on at this time.

■ Another reason assigned for setting aside the verdicts and judgment, that the petitioner had a good defense to the action, of which he was entirely ignorant, to wit, the adultery of Mrs. Young both before and during the pendency of the action for divorce, is without merit. While it has been held that in a suit by one spouse for divorce, based on cruel treatment, the other spouse may recriminate the adultery of the plaintiff (*Johns* v. *Johns,* 29 *Ga.* 718; *Anderson* v. *Anderson,* 140 *Ga.* 802, 79 S. E. 1124), yet, before a judgment may be set aside for a defense of which the defendant was entirely ignorant, it must appear that the failure to know of the defense was not due to any negligence on his part. *Beddingfield* v. *Old National Bank & Trust Co.,* 175 *Ga.* 172 (165 S. E. 61); *Red-*

*wine* v. *McAfee,* 101 *Ga.* 701 (29 S. E. 428) ; *Berry* v. *Burghard,* 111 *Ga.* 117 (36 S. E. 459). It clearly appears from the allegations of the petition that the petitioner suspected the immoral conduct with which he now charges Mrs. Young, and that upon the exercise of reasonable diligence he could have ascertained the same. No good reason is given why he did not ascertain at the time of his first suspicions, and pending the trial, whether Mrs. Young had been guilty of such conduct, from the witnesses on whom he now depends to establish the charge made, and who were known to him to be the persons who probably knew of that conduct. In this connection it is alleged that on several occasions the petitioner asked Mrs. Young if she had been guilty of such conduct, and she represented to him that she had not. In several places in the petition this conduct is referred to as fraudulent concealment as to petitioner and the court. Mrs. Young as plaintiff was under no legal duty to disclose either to the defendant or the court such matter of defense; and this constitutes no reason why the judgment should be vacated. "The mere failure of a party to disclose to the court or to his adversary matters which would defeat his own claim or defense is not such a fraud as will justify or require a vacation of the judgment." *Coker* v. *Eison,* 40 *Ga. App.* 835 (3) (151 S. E. 682) ; cf. *Capital Bank of Macon* v. *Rutherford,* 70 *Ga.* 57 (2).

■ In addition to the above-considered allegations, which disclose that the petitioner had a meritorious defense to the action for divorce, he charges that he was prevented by coercion and duress on the part of Mrs. Young from appearing and contesting the action. A judgment obtained by fraud may, in a proper case, be set aside in equity. *Branan* v. *Feldman,* 158 *Ga.* 377 (3) (123 S. E. 710). As pointed out above, the fraud relied upon must be extrinsic or collateral to the matter tried in the rendition of the judgment. "Fraud is extrinsic or collateral, within the meaning of the rule, when it is one the effect of which prevents a party from having a trial, or from presenting all of his case to the court, or which operates, not upon matters pertaining to the judgment itself, but to the manner in which it is procured." 15 R. C. L. 763. Examples of such fraud are found in *Ford* v. *Clark,* 129 *Ga.* 292 (58 S. E. 818) , where the plaintiff's attorney represented to the defendant that he need not file an answer, because the suit would be dismissed, and without the defendant's knowledge judgment was

taken against him at a subsequent term of the court; in *Doyal* v. *Tommey*, 160 *Ga.* 378 (127 S. E. 750), where the parties entered into a contract settling the suit, and the plaintiff represented that he would have the case dismissed, but nevertheless thereafter took judgment against the defendant; and in *Southern Ry. Co.* v. *Planters Fertilizer Co.*, 134 *Ga.* 527 (68 S. E. 95), where judgment was taken against the defendant without his knowledge, and after an agreement for continuance. See also *Beverly* v. *Flesenthall*, 142 *Ga.* 834 (83 S. E. 942); *Giles* v. *Cook*, 146 *Ga.* 436 (91 S. E. 411); *Ellis* v. *Hogan*, 147 *Ga.* 609 (95 S. E. 4); *Southern Railway Co.* v. *Daniels*, 103 *Ga.* 541 (29 S. E. 761). Cf. *Booth* v. *Stamper*, 6 *Ga.* 172. Another and more concrete statement of this rule is that "Equity will interfere to set aside a judgment of a court of competent jurisdiction only where the party had a good defense of which he was entirely ignorant, or where he was prevented from making it by fraud or accident, or the act of the adverse party, unmixed with fraud or negligence on his part." *McCowen* v. *Flanders*, 155 *Ga.* 701 (118 S. E. 351); *Robbins* v. *Mount*, 3 *Ga.* 74; *Bellamy* v. *Woodson*, 4 *Ga.* 175 (48 Am. D. 221); *Cleckley* v. *Beall*, 37 *Ga.* 583; *Augusta Mutual Loan Association* v. *McAndrew*, 63 *Ga.* 490; *Latimer* v. *Irish American Bank*, 119 *Ga.* 887 (47 S. E. 322); *Walker* v. *Hall*, 176 *Ga.* 12 (166 S. E. 757); *Waters* v. *Perkins*, 65 *Ga.* 32; *Cunningham* v. *Schley*, 68 *Ga.* 105. Duress is considered as a species of fraud in which compulsion in some form takes the place of deception in accomplishing an injury, and, like fraud, constitutes a meritorious ground to set aside a judgment obtained thereby. *Colclough* v. *Bank of Penfield*, 150 *Ga.* 316 (103 S. E. 489); Yocum *v.* Taylor, 179 Iowa, 695 (161 N. W. 636); Graham *v.* Graham, 54 Wash. 70 (102 Pac. 891, L. R. A. 1817B, 405, 18 Ann. Cas. 999). The case made by the petition in this connection, in condensed form, may be stated substantially as follows: Mrs. Young's parents, Mr. and Mrs. W. E. Plitt, lived in Baltimore, Md., where Mr. Plitt was and had for many years been employed by the same railroad company for which the petitioner worked. Mr. Plitt at one time acted as private secretary to O. S. Lewis, who was petitioner's superior officer. Upon there arising domestic difficulties between the parties, Mrs. Young would on such occasions threaten to get her father to have the petitioner fired; and on several of these occasions Mr. Plitt

gave petitioner to understand that unless he did as Mrs. Young wanted done, he would, through his influence with Lewis, see to it that he lost his job. When Mrs. Young first told petitioner of her intention of seeking a divorce, she threatened that if he did not consent thereto she would get her father to speak to Lewis "to get your petitioner's job." On several occasions both before and during the pendency of the suit for divorce, petitioner informed Mrs. Young that he would appear and plead in said case and claim the custody of the child, and on such occasions she threatened bodily harm to the child if he did so. She had never shown much affection for the child, and had a violent temper. "Being fearful that defendant would carry out her threats against the child and fearful that Plitt would cause him to lose his job, he consented to the divorce and to remain away from court during the pendency of the divorce action."

Duress, as defined in the Code, "consists in any illegal imprisonment, or legal imprisonment used for an illegal purpose, or threats of bodily or other harm, or other means amounting to coercion or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will." Code, § 96-209. "This definition is sufficiently comprehensive to include any conduct which overpowers the will and coerces or constrains the performance of an act which otherwise would not have been performed. *Bond* v. *Kidd,* 122 *Ga.* 812 (50 S. E. 934)." *Dorsey* v. *Bryans,* 143 *Ga.* 186 (84 S. E. 467, Ann. Cas. 1917A, 172). "Threats of bodily or other harm, or other means amounting to coercion, or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will," is duress. *Russell* v. *McCarly,* 45 *Ga.* 197; *Jordan* v. *Beecher,* 143 *Ga.* 143, 147 (84 S. E. 549, L. R. A. 1915D, 1122). This is an enlargement of the common-law rule, and covers threats both to person and property. 17 Am. Jur. 877. Thus, threats of bodily harm to petitioner's child, and threats of unlawful interference with his job, may amount to duress. Cf. *Bailey* v. *Devine,* 123 *Ga.* 653 (51 S. E. 603, 107 Am. St. R. 153); *Cromer* v. *Evett,* 11 *Ga. App.* 654 (75 S. E. 1056); *Hodges* v. *Citizens Bank,* 146 *Ga.* 624 (92 S. E. 49); *Smith* v. *Coker,* 110 *Ga.* 654 (36 S. E. 107). It must appear that such threats were sufficient to subvert the will of the party to whom they were made (*Candler* v. *Byfield,* 160 *Ga.* 732, 129 S. E. 57), and

that there were grounds for reasonable apprehension that they would be carried out. *Dorsey* v. *Bryans,* supra. The allegations of the petition, it is true, do not make an exceedingly strong case in this connection, but they are sufficient to withstand a general demurrer. From these allegations it appears that Mr. Plitt had theretofore indicated to petitioner both his willingness and ability to unlawfully interfere with his position with the railroad. It further appears that Mrs. Young on several occasions threatened bodily harm to the child, and that because of the fact that she was desirous of the divorce, and had a violent and unruly disposition, and had never shown any affection for the child, he believed that if he appeared and defended the action and claimed the custody of the child she would carry them out. It is alleged that the threats were made for the express purpose of preventing him from appearing and defending the action, and to further coerce him into entering into the contract providing for permanent alimony. If he was so acted upon by these threats as to be bereft of his free will, and was thereby prevented from appearing and contesting the divorce and seeking custody of the minor child, and was thereby coerced into the making of the contract for permanent alimony which was made the judgment of the court, the judgment should be annuled. The allegations of the petition are sufficient to present a question for determination by a jury. Cf. *Hixon* v. *Georgia Southern & Fla. Ry. Co.,* 163 *Ga.* 734 (8) (137 S. E. 260). By virtue of the allegations setting up duress in obtaining the judgments, the petition was not subject to general demurrer. The other reasons assigned for vacating the judgments are not meritorious. They do, however, serve the important purpose of showing that the petitioner has a good defense to the action. *Smith* v. *Sheffield,* 83 *Ga.* 103 (9 S. E. 791). The judgment overruling the general demurrer is    *Affirmed. All the Justices concur.*